VIRGIL F. TOADVINE, JR. AND VESTA I. TOAD-
VINE, t/a Virgil Toadvine & Son ET AL. *v.*
BARBARA ANN LUFFMAN ET AL.

[No. 407, September Term, 1971.]

*Decided February 4, 1972.*

The cause was argued before MURPHY, C. J., and MOR-
TON and ORTH, JJ.

*Glenn C. Parker,* with whom were *Theodore B. Corn-*

*blatt* and *Smith, Somerville & Case* on the brief, for appellants.

*George H. White* and *Wade H. Insley, III,* with whom were *Porter, Cullen, Clark & White* on the brief, for appellees.

ORTH, J., delivered the opinion of the Court.

The question presented on this appeal is whether the Circuit Court for Wicomico County erred in confirming the decision of the Workmen's Compensation Commission that two minor children were totally dependent for their support upon their father at the time he died from an accidental personal injury arising out of and in the course of his employment. The only issue involved is the total dependency of the children.[1]

Chief Judge Murphy of this Court, who, by special assignment, delivered the opinion of the Court of Appeals in *Johnson v. Cole,* 245 Md. 515, summarized the governing principles of dependency under the Act:

> "As we noted in *Mullan Construction Co. v. Day,* 218 Md. 581 (1959) a 'dependent' within the meaning of the statute is one who relies in whole or in part upon the workman for the reasonable necessities of life at the time of the accident. Generally, one who subsists entirely upon the earnings of a deceased employee is a total dependent but a legal or moral obligation to support a person does not create dependency in the absence of actual support. *Mario Anello and Sons, Inc. v. Dunn,* 217 Md. 177 (1958). A

1. The issue before the Commission was the nature and extent of dependency. The Commission found that the deceased left surviving him his widow, who was partially dependent upon him for her support, and two daughters who were totally dependent upon him for their support. It awarded the daughters compensation benefits in the amount of $27,500 to be paid at the rate of $70 a week. Code, Art. 101, § 36 (8) (a) and (c). It awarded the widow $750 toward the funeral expenses incurred by reason of her husband's death. § 37 (d).

claimant need not, however, show destitution in order to obtain an award as a total dependent. He may receive temporary gratuitous services, occasional financial assistance or other minor benefits from sources other than a deceased workman, but he must not have had a consequential source or means of maintenance in addition to what is received out of the earnings of the deceased. *Larkin v. Smith,* 183 Md. 274 (1944). In other words, compensation should not be denied a claimant as a total dependent merely because of occasional financial aid received by him from other sources or other benefits which do not substantially affect or modify his status toward the deceased employee. *Superior Builders, Inc. v. Brown,* 208 Md. 539 (1956)." At 520.

"In all cases, questions of dependency, in whole, or in part, shall be determined by the Commission in accordance with the facts in each particular case existent at the time of the injury resulting in the death of such employee." Code, Art. 101, § 36 (8) (d). Making questions of dependency questions of fact was construed by the Court of Appeals to mean "the fact of receipt of pecuniary support, whether in money, services, or otherwise in money's worth." *Brooks v. Bethlehem Steel Co.,* 199 Md. 29, 33. It is therefor that legal or moral duty to support is not necessary, and in the absence of actual support is not sufficient, to constitute dependency. Ibid. The statutory provision does not mean that the question of dependency is necessarily a matter for the trier of fact. Although it was said in *Knibb v. Jackson,* 210 Md. 292, 297 that "[t]he majority of the Court feels that dependency should not be decided as a matter of law * * *" we think it clear from the entire opinion and as it was explicated in *Mario Anello v. Dunn,* 217 Md. 177 at 182 that questions of dependency may be matters of law for the court. It is well settled that where the evidence, or

any inferences fairly deducible from it, is legally sufficient to support a rational conclusion of total dependency as opposed to the theory for a directed verdict in a jury trial, Maryland Rule 552, or a motion to dismiss in a bench trial, Rule 535, the issue is for the trier of fact.[2] "On the other hand, [the Court of Appeals] has consistently held the converse to be true, i.e., where the facts are undisputed, and permit no inference consistent with the existence of a supposed or asserted right, the existence of such right is an unmixed question of law for the court, whether the question is dependency or otherwise." *Anello* at 181, citing cases. See also *Mullan Construction Co. v. Day, supra,* at 586-587. Although under the statute the rights of a claimant are determined as of the date of the injury, what happened before is relevant to show the status of the parties at the time of the injury, subject, of course, to the usual rule of evidence concerning remoteness. *Outten Bros. v. Dunn,* 232 Md. 590, 595. And we observe that the Court of Appeals has expressly stated that it "has refused to put a narrow construction on the meaning of the statute as to total dependency." *Knibb v. Jackson, supra,* at 297.

In the instant case the facts adduced to show the status of the parties at the time of the injury were not disputed. No transcript of proceedings before the lower court appears in the record sent to us. We assume that the case was submitted to the lower court on the record before the Commission, including the transcript of the proceedings at the hearing. The claimant was Hollis Gene Luffman, deceased employee—Barbara Ann Luffman, widow, who as mother and as next friend and guardian of Violet J. Luffman and Patricia A. Luffman are the appellees here. The employer was Virgil F. Toadvine, Jr. and Vesta I. Toadvine, t/a Virgil Toadvine & Son, and its insurer was Nationwide Mutual Insurance Co., who are the appellants. The evidence adduced at the hearing

---

2. See *Lewis v. Germantown Ins. Co.,* 251 Md. 535 for a discussion of motions for a directed verdict and motions for dismissal.

consisted of a Certificate of Marriage showing that the Luffmans were married in 1957, proof by proper certificates of the birth of two children of the marriage, Violet Jean Luffman on 3 February 1958 and Patricia Ann Luffman on 2 December 1960, the certificate of death of Hollis Gene Luffman on 16 July 1970, the same day he was injured,[3] and the testimony of Barbara Ann Luffman, the only witness. Her uncontroverted testimony and various stipulations showed that at the time of Luffman's death they were living together as husband and wife. Their two daughters lived with them. Both she and her husband were employed. Each had worked regularly for some years, he as a plumber for Toadvine and she in a shirt factory. In 1969 he earned $5,482.70; she earned $3,572.74. For the two months immediately preceding his death his average weekly wage was $125; her average weekly earnings were between $72 and $93 on piece rate. Her husband would bring his pay home. "We would go to the bank have the check cashed together or he would have it cashed and give the whole check to me. * * * I * * * taken both of them and paid the bills and whatnot, I did. He give his check to me." She said all the money went for the support and maintenance of her family. All of her money was "put into the home" and all of his money was "put into the home." She said that at the time of her husband's death he was contributing only to the support of her and their children. Asked: "And you and he both contributed to their support and taking care of your house and so on?", she replied, "They fully depend on him. Actually, I partially depend on him," although her money "went into groceries and paying [their] bills and so on" just like his did. On inquiry by the Commission it was elicited that she had not "lost too much time" from her work before her husband's death. "The only thing is, see, I had to depend on him if I wasn't able to work." They had no savings or checking account. The house they lived in was rented for $90 a

3. He was electrocuted installing a water pump.

month. The food bill for the family was between $30 and $40 a week. The transcript reads:

> "THE COMMISSION: Did I understand you to say that you paid all of the bills that your husband brought his money home and you took the money and disbursed it?
> A. I handle the money. Now, he paid the bills but I give him the money to do it with after he give it to me.
> THE COMMISSION: He give you the money and you doled it out, back out to him when the electric light bill or gas bill or phone bill . . .
> A. I gave it back to him sir.
> THE COMMISSION: Told him to go pay the bills?
> A. No. I didn't have to tell him, he was willing to do it.
> THE COMMISSION: In other words, you knew where the money was going when you gave it to him?
> A. Yes, sir."

On redirect examination she said she and her husband operated a restaurant and that there were "quite a few debts from that restaurant still outstanding." The subject was not further pursued.

On this evidence the lower court made factual findings that "Barbara Ann Luffman was regularly employed at the time of her husband's death and in 1969 earned something in excess of $3500, that during the same period her husband earned an amount in excess of $5400. The entire earnings of both parties were pooled, the wife having control of the fund, and all of the money was used in the home for the support and maintenance of the family, as well as the general expense and upkeep of the home." It concluded:

> "[H]ere we have a situation with a father under a legal and moral obligation to support his

minor children and actually throwing into a common fund his entire earnings, along with those of the mother, which money went for the actual shelter, clothing, and food of the children. No accounting of who earned which dollar spent is had, nor should it be required. It is my feeling that the small amount contributed by the mother could do no more than form the basis of the holding that she was a partial dependent. I do not believe that it should go so far as to hold the mother made any substantial contribution toward the upkeep and maintenance of the children."

It confirmed the Order of the Commission.

The factual findings of the court are in accord with the evidence before it. Both appellants and appellees agree that all the income of Mr. Luffman and Mrs. Luffman "went to the support and maintenance of the family." But, accepting the facts as found, we are not able to accept the reasons advanced by the lower court in reaching its decision. First, as we noted *supra,* a legal or moral duty to support is not sufficient to constitute dependency, so the duty of Luffman to support his daughters was not relevant to the issue of their dependency. Second, even if such duty were relevant, it would not be germane, for Mrs. Luffman had an equal duty legally to support their daughters. "The father and mother are the joint natural guardians of their minor child and are jointly and severally charged with its support, care, welfare and education. They shall have equal powers and duties, * * *." Code, Art. 72A, § 1. Nor could we say that the moral obligation of the mother to support the children was any less than that of the father. Third, we do not agree that the earnings of Mrs. Luffman constituted a "small amount" and made no "substantial contribution." They comprised about 40% of the total income. We feel that their regular contribution amounted as a matter of law to a consequential source of the combined funds.

Appellants claim that in any event upon the evidence tending to establish and the court finding that the earnings of Mr. and Mrs. Luffman were pooled and the family supported and maintained out of the pooled funds, "the conclusion necessarily followed as a matter of law that both the wife and the children were partial, and not total, dependents." They urge that this was the precise holding in *Knibb v. Jackson, supra, Mario Anello v. Dunn, supra,* and *Mullan Construction Co. v. Day, supra,* and that a contrary conclusion could be reached only by departing from the ruling in those cases. The three cases were squarely before the lower court.[4] It had no trouble with them, considering them only as authority for finding the wife was no more than a partially dependent person. We believe they require close scrutiny.

It is correct that in both *Mullan* and *Anello* the ultimate result was a finding as a matter of law that a wife was not totally dependent but only partially dependent upon her husband for her support. In *Mullan* the Commission had found the wife to be partially dependent. On appeal to the Baltimore City Court the case was heard before a jury. At the close of the evidence the court refused to give instructions submitted by the employer and insurer for a directed verdict in their favor on the issues of whether the wife was partially or totally dependent upon the deceased husband. The jury found she was totally dependent. A motion for judgment n.o.v. was denied. The Court of Appeals held that the lower court erred in refusing to give the instructions and in denying the motion. The evidence was that the husband and wife were both employed at the time of his death, he earning $59.60 a week and she earning $30 a week. She steadfastly maintained that she and her husband had never pooled their earnings. "She used her money to buy things she needed around the house such as linens and dishcloths. Some of it was also used for church and carfare. And she bought small things for herself such as hose

---

4. Appellants filed a Memorandum of Law below citing the three cases and discussing the rulings in the opinions.

and gloves at a cost of less than ten dollars a week. She could not explain, however, what was done with the re-mainder of her weekly earnings, but stated that she spent the couple of dollars she had left over at the end of the week on herself. She did not have a savings account; nor did she own any bonds or other securities." 218 Md. at 581. There was evidence that the husband paid all of the household bills. The Court observed:

> "[T]he use of the term "pooled' by the courts in compensation cases is but one of convenience to point out that the claimant used a part of his earnings to pay the common household ex-penses. Whether earnings are in fact pooled must depend upon the circumstances, and the inferences deducible therefrom, in each case. An anomalous situation would ensue if a claim-ant could acquire the status of a total dependent merely by disclaiming the use of his earnings in or about the home or its affairs." 218 Md. at 588.

It said: "[I]n a case such as this where the earnings of the wife were substantial, where she did not subsist solely out of the earnings of her husband, and where she either could not or would not account for more than half of her net earnings, she cannot establish the status of a total dependent by merely claiming she did not pool her earnings with those of her husband." At 589. It is significant that the Court found the *Anello* case control-ling. At 588.

In *Anello* the facts, as in the case before us, were few, simple and undisputed. The husband was injured in the course of his employment and died. At the time of his death and prior thereto his wife was also employed. She had an average take home pay of about $30 a week and he earned an average weekly wage of $90. She pooled the money she earned with the money her husband earned, and they used their money together to pay the bills. The

case was submitted to the jury, over timely motions by the employer and insurers for a directed verdict, to answer the issue whether the claimant-wife was "wholly dependent" upon her husband at the time of his injury and death. The jury's answer was "Yes." The Court, said, at 182-183: "[T]he claimant admits her earnings were pooled with her husband's and used to pay their bills, which means, if we are not to depart from the ruling in the *Knibb* case, that if her contributions to the pool were a consequential source of her maintenance, she was not wholly dependent upon her husband as a matter of law. * * * In view of [the wife's] substantial contributions to the pool of her and her husband's wages for nearly two and one-half years extending to the date of his injury, and the use of the funds for the support of the family, we are unable to say that a jury could properly find, or infer, that her earnings were not a consequential part of her maintenance; therefore she was not wholly dependent upon her husband." Thus both *Mullan* by relying on *Anello*, and *Anello* by relying on *Knibb*, are each controlled by the *Knibb* rulings.

*Knibb* did not involve a wife-husband dependency question but a brother-brother dependency question. Three rulings were made in reaching the decision. The first was that the case was one which was properly submitted to the jury to determine whether the Commission (then styled the Industrial Accident Commission) was right in deciding there was total dependency. The second was that the trial court erred in instructing the jury regarding temporary gratuitous services, occasional financial assistance, and minor considerations or benefits which do not substantially modify or change the general rule as to dependency. See the quote from *Johnson v. Cole, supra,* set out herein above. The third was that the trial court erred in refusing to instruct the jury on the question of the pooling of the family funds and the use of the pool for the support of the whole family.

The facts of the case were not complex. A mother, Mrs.

Emma Jackson, and her two sons, Joseph, thirteen, and James, seventeen and a half, lived together. The mother had supported the family until James went to work when he became sixteen. She earned $37 a week and he earned $35 a week. James gave his mother $22 a week—$7 for his board, $5 for herself and $10 for Joseph. There was evidence which would have permitted a finding either that the earnings of the mother and the contribution of James were pooled in a single fund and used for the benefit of all three of the family, or that the $10 a week James gave his mother was used entirely for Joseph's benefit and constituted his only consequential source of support. Since the evidence permitted a finding either way it was for the jury to resolve. It is what the court said in reaching this conclusion that is relevant to our inquiry. It referred to *Brooks v. Bethlehem Steel Co., supra,* in which the Court found as a matter of law that two children, one of whom lived with her grandmother and the other with her mother, were not totally dependent upon their father, who regularly sent them each $5 a week, and had given them spending money and clothing from time to time. The *Brooks'* finding was that on the undisputed facts they were dependent upon the grandmother and mother, respectively, and never had been deprived of the rights of total dependents. So said the Court in *Knibb*: "In the case before us, if the parts of the testimony and the inferences from it, stressed by the appellants [the employer and insurer], were established as the facts, the case would be difficult, if not impossible, to distinguish from the *Brooks* case." 210 Md. at 296. In *Anello,* after pointing out that the parts of the testimony and inferences from it referred to in *Knibb* as stressed by the employer and insurer were "principally the pooling of the earnings", the statement was explained: "Meaning, of course, that if the *Knibb* case could not be distinguished from the *Brooks* case, the question of total dependency would be a matter of law not to be submitted to the jury." 217 Md. at 182.

The third reason for the reversal in *Knibb* is also ap-

posite to our inquiry here.[5] The instruction which the trial court refused to give was that if it found that the earnings of the deceased brother James and the earnings of the mother, never totalling less than $50 a week "were pooled for the common support and maintenance of the three members of the household, as of the date of this injury, that in such event the jury must find that the dependency of the claimant, Joseph Jackson, is a partial dependency and not a case wherein Joseph Jackson is wholly dependent upon the deceased worker, James Jackson." The court held flatly that the requested instruction should have been given. 210 Md. at 300-301. In so holding it found not sound the claimants' argument that the court made no error in refusing to give the requested instruction because a finding of the Commission, unappealed from, was that the mother was partially dependent upon James and, therefore, Joseph could not be found to be partially dependent on the mother. It said, at 300:

> "In *States Engineering Co. v. Harris,* 157 Md. 487, a father was found to be dependent upon his deceased son who, at the time of his death, was living with his father and stepmother. The earnings of the father and the son were all given to the stepmother, and with the exception of $5.00 or $6.00 a week which were returned to the son, were used for family expenses. It was held that the fact that the contributions of the son enabled the father to support the stepmother better than he otherwise

---

5. The second reason is not apropos to our inquiry. We think it clear that the contributions of Mrs. Luffman could not be classified as temporary gratuitous services, or occasional financial assistance, or minor considerations or benefits. We note that the instruction regarding those matters was ground for reversal in *Knibb* even though entirely correct as an abstract statement of the law because "correct abstract statements of law may be very misleading if they are used as an instruction in a case where the facts are such that the statement has little application or relevance." The Court thought that under the facts of *Knibb* the instruction was erroneous and misleading. 210 Md. at 300.

could have done was to be considered in determining the dependency of the father on the son. Here, we think it could have been inferred by the jury that the contributions of James helped Mrs. Jackson to contribute to Joseph's support more easily and on a better scale than if the contributions had not been made, and that there is nothing necessarily inconsistent in Mrs. Jackson and Joseph both being partially dependent on James."

In the instant case it was expressly found by the lower court, and in fact undisputed, that the earnings of the mother and father were pooled and all of the money used "in the home for the support and maintenance of the family, as well as the general expense and upkeep of the house." This means, if we are not to depart from the rulings in the *Knibb* case, that if the mother's contributions to the pool were a consequential source of the children's maintenance, they were not wholly dependent upon the father as a matter of law. We have found that the mother's contributions were a substantial source, about 40%, of the total funds. We think it patent, then, that her contributions were a consequential source of the children's maintenance and support contributing to their shelter, food and clothing and were pecuniary support to them. At the least her contributions helped the father to contribute to the children's support more easily and on a better scale than if the contributions had not been made. The mother's contributions were regular as distinguished from occasional, permanent as distinguished from temporary, substantial as distinguished from minor. In view of her contributions of such nature to the pool of her and the father's earnings for some years extending to the date of his injury, and the use of the funds for the support of the family, we are unable to say that the trier of fact could properly find, or infer, that her earnings were not a consequential part of the children's maintenance. Therefore, they did not subsist entirely upon the earnings of the father and

were not totally dependent upon him.[6] And we point out that according to *Knibb* there is nothing inconsistent in both the mother and the children being partially dependent on the father even though the children were partially dependent upon the mother.

We do not feel free to depart from the principles of *Knibb*. The Court of Appeals applied them in *Anello* and in *Mullan*. The appellees do not claim that the Court has departed from them but seem to dispose of them as clearly distinguishable on the facts. As we have stated, we think the principles governing the decision in each of them are applicable here. Compare *Bituminous Constr. Co. v. Lewis,* 253 Md. 1 and *Outten Bros. v. Dunn, supra,* in which the Court thought that the evidence was not sufficient to find as a matter of law that sources of income other than from the deceased workman were a consequential source or means of maintenance. And see *Simmons v. B. & E. Landscaping Co.,* 256 Md. 13, and *Johnson v. Cole, supra,* in which holdings that children were only partially dependent upon the deceased workman father were affirmed.

As we do not set aside the judgment of the lower court on the evidence, the clearly erroneous provision of Rule 1086 is not invoked. But the conclusions of law of the lower court based on the evidence are reviewable by us. *Space Aero v. Darling,* 238 Md. 93, 106. For the reasons set forth we find it misapplied the law. We so find in the light of Code, Art. 101, § 56 (c) ; the undisputed facts supplied the burden of proof imposed on the appellants.

> *Order of 5 August 1971 of the C i r c u i t Court for Wicomico County reversed; case remanded for further proceedings; c o s t s to be paid by appellees.*

6. We are aware that during her testimony Mrs. Luffman said at one point that the children fully depended upon the father. But this conclusion was not supported by, and on the contrary, was contradicted by the entirety of her testimony. We note the lower court made no reference to this statement in reaching its decision.