WASHINGTON SUBURBAN SANITARY COMMIS-
SION ET AL. *v.* O'DONNELL ET AL.

[No. 37, October Term, 1955.]

*Decided December 2, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Lansdale G. Sasscer, Jr.,* with whom were *Lansdale G. Sasscer, Hal C. B. Clagett, Jerrold V. Powers* and *Sasscer, Clagett & Powers* on the brief, for the appellants.

*Vivian V. Simpson* and *Ralph W. Powers,* with whom were *Simpson & Simpson* and *Powers & Clifford* on the brief, for the appellees.

HAMMOND, J., delivered the opinion of the Court.

The Circuit Court, sitting without a jury, affirmed a finding of the State Industrial Accident Commission that a son was totally dependent upon his father at the time of the accidental injury that resulted in the death of the father. The parties are in agreement that the only question raised by the appeal is whether the court was correct in affirming the finding as to total dependency, the appellants claiming that the record is devoid of evidence legally sufficient to permit such a finding, and the appellee saying that the appellants have not met their burden of showing error and that the evidence clearly affords a basis for the conclusion that the son was wholly dependent on the father.

The testimony showed the following facts. The father and mother were married in 1933. After the marriage, she stopped her work as a registered nurse for some years and then began again on a casual and occasional basis. In May, 1951, she went back to steady work at the Montgomery County General Hospital, where she had worked prior to her marriage. The last time she nursed before that was in 1947, when she took two cases. The son was born in 1934. The father supported the family until May, 1951, when the farm on which he had worked for the last three years was sold, and the family bought a parcel of land near Ellicott City on which they planned to build a home. From a $5,000.00 inheritance from her brother, the mother contributed $2,000.00 of the $2,800.00 purchase price and the father contributed the balance. The father was a carpenter by trade and it was decided that the most economical and feasible plan would be for him to build the house himself. This, of course, meant that he would earn no income during the time he was thus engaged. The mother testified that it was for this

reason, and this reason only, that she went back to work—so that the family could live during the time the house was being built. Her earnings were $155.00 a month, before taxes, with a $25.00 a month travel allowance. In April or May of 1952, the house was in condition to live in, some three-quarters finished, and the father went to work for the Washington Suburban Sanitary Commission as a carpenter at a salary of $122.20 a week. He continued to work on the house on rainy days and on weekends. During the summer of 1952, the son, who was then eighteen, gained employment with the Commission on the project on which his father worked and earned approximately $900.00. Of this, he saved $400.00 for his college education and spent $500.00 for incidental expenses and the rebuilding and upkeep of his automobile, which had been bought for him by his father and mother. His mother contributed $380.00 and his father, $200.00, to the purchase price of the car. On November 26, 1952, the father was fatally injured in the course of his employment. The mother had continued to work and was then still employed by the hospital, although she testified that she had planned to stop work the next month.

During the period from May, 1951, to May, 1952, the family subsisted on the earnings of the mother. From past savings and loans, the father paid for the materials that went into the house. From May, 1952, until November, 1952, the father, as he had done before May, 1951, paid for the family groceries, his son's clothing and school supplies, gave his son spending money and paid his medical and dental bills. The son testified that his father was his sole support. The mother testified that the father was the son's sole support, and when asked whether she contributed to her son's support, said no, that was her husband's job and he did that entirely. After May, 1952, she used her earnings for the expenses of the car in which she travelled to and from work, for the purchase of her clothing, and contributed to the payment of oil and electric bills. She saved three or four hundred dollars of

her earnings and, although it is not clear from the record just when she did so, it would seem likely that it must have been in the six months from May to November, 1952, since the living expenses of the family in the year prior to May, 1952, would have consumed all she earned during that period.

The trial court, on this testimony, held that at the time of the father's death, the son "* * * had no *consequential* source or means of maintenance other than the earnings of his father; which means that the State Industrial Accident Commission was correct in its construction of the law and the facts when it determined that he was totally dependent."

This Court has recently enunciated the principles which control the case. In *Larkin v. Smith,* 183 Md. 274, the Court said the rule was that total dependency exists where the dependent subsists entirely on the earnings of the workman, but that in applying this rule courts have not deprived claimants of the rights of total dependents, when otherwise entitled thereto, on account of temporary gratuitous services rendered them by others, or on account of occasional financial assistance received from other sources, or on account of other minor considerations or benefits which do not substantially modify or change the general rule. It went on to say: "There is another terminology frequently used and quoted, 'that the individual has no consequential source or means of maintenance other than the earnings of the workman.' "

In *Bethlehem-Fairfield Shipyard v. Rosenthal,* 185 Md. 416, 422, this Court repeated the language used in the *Larkin* case that the one who owns the home in which he lives, or for whom others perform friendly services, is not technically "wholly dependent" on the wages of the worker and that neither is one who receives help from a charitable organization or from neighbors, but that the Legislature did not intend that such a person should be considered only a partial dependent.

In the *Larkin* case, the mother owned jointly with an uncle the home in which she was living with her children, her husband having left the family. It was held that neither the gratuitous contribution which she received from the proprietor of a restaurant, her former employer, nor her egg money, nor her part ownership of the home in which she lived, was enough to show that she was not wholly dependent upon her son who paid her $18.00 a week for her support. In the *Rosenthal* case, the claimant wife, who had been married to the deceased husband in 1922, had never worked until 1943. The family moved to Baltimore in 1942 and the son went into the Navy. In 1943, the wife accepted a position and was employed at the date of her husband's death at an average salary of $30.00 a week. He was earning an average of $47.45 a week, which was somewhat more than he had earned during their prior married life. She testified that the reason she took employment was because her boy was in the Navy and she was worried and wanted to occupy her mind, and only intended to work until her son came home, because her husband made a living for her. She put most of her money into a savings account. The Court held that the jury should have had the opportunity to determine whether or not the wife was totally dependent on the husband for support. Cases from other States which bear enough analogy on the facts to be helpful in illustrating the rule we have been discussing, include: *Thomas v. Raleigh Gas Co.* (N. C.), 11 S. E. 2d 297; *Obear-Nester Glass Co. v. Industrial Commission* (Ill.), 75 N. E. 2d 892; *Garbutt v. Stoll* (Mich.), 283 N. W. 624; and *Ocean Accident & Guarantee Corp. v. Jones* (Ga.), 194 S. E. 75.

We think that the evidence in the case before us permitted the finding that the mother worked from May, 1951, to May, 1952, solely to permit the building of the house by the father and that her support of the family during that period could be regarded in the same light

as if she had contributed cash toward the purchase or building of a home. If she had made such a contribution, the father could have worked, as he had for many years past and did again after the home was built, and paid another to build it. The mother's position as a total dependent of the father would not be changed merely because she had an interest in the home in which the family lived. If this were so, the wife in every case in which the home is owned as tenants by the entireties—she in such case having an undivided interest in the home with the legal right to one-half of the rents if the home should be rented—would lose her rights as a total dependent of the husband, even though this was the only contribution she made to the family pool of financial resources. If the wife does not cease to be a total dependent in such situation, it can scarcely be reasonable to regard the son as not totally dependent upon the father, if otherwise he were so, because he lived in the home in which his mother had a partial interest. The mother's contributions from May, 1952, to November, 1952, which she said were to cease the following month, continued after her husband resumed work because the home had still to be finished and her payments on the electric and oil bills helped the husband to pay for the cost of its completion, or so it might have been found. We think that the mother's contributions to the family after May, 1952, might properly have been found, as they were, to come within the definition of temporary or occasional financial assistance and that, as far as the son was concerned, he had no consequential source or means of maintenance other than the resources and earnings of his father at the time of the father's death. The appellants do not contend that the son, because of his earnings during one summer, was not totally dependent upon his father; rather, they base their case on the fact that the mother's contributions to the family's resources constituted the son a partial dependent of hers and a partial dependent of the father

rather than a total dependent of the father. As we have indicated, we think the evidence permitted a contrary finding.

The statute, Code, 1955 Supp., Art. 101, Sec. 57, provides that in an appeal from a decision of the Industrial Accident Commission: * * * "The court shall determine whether the Commission has justly considered all the facts concerning the injury, whether it has exceeded the powers granted it by the article, and whether it has misconstrued the law and facts applicable in the case decided." It continues: "If the Court shall determine that the Commission has acted within its powers and has correctly construed the law and facts, the decision of the Commission shall be confirmed; otherwise it shall be reversed or modified." The court found that the Commission had acted within its powers and had correctly construed the law and facts, and we find no error in its conclusions.

*Order affirmed, with costs.*