586 A.2d 1290

**LINDER CRANE SERVICE CO., et al.**

v.

**Joseph F. HOGAN, Jr., et al.**

**No. 873, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

March 7, 1991.

Robert L. Humphreys, Jr. (Phillip T. Levin, Smith, Somerville & Case and David R. Jones, Asst. Atty. Gen., on the brief), Baltimore, for appellants.

Dennis M. Andreone, Serio, Higdon & Andreone, Baltimore (David J. Lipinski, on the brief), Towson, for appellees.

Argued before BISHOP, BLOOM and ROBERT M. BELL, JJ.

BISHOP, Judge.

Linder Crane Service Company and the Subsequent Injury Fund appeal from the May 16, 1990 order of the Circuit Court for Baltimore County (Howe, J., presiding) which granted summary judgment to the appellee and thereby affirmed the decision of the Worker's Compensation Commission. The Worker's Compensation Commission held that Frances Hogan, appellee, continued to be wholly dependent upon Joseph Hogan, Jr., deceased, and was entitled to continued Worker's Compensation benefits pursuant to Md. Ann.Code art. 101, § 36(8)(a) (1984).[1]

## ISSUES

Appellants present the following issues on appeal:

I.   Whether the Circuit Court for Baltimore County erred by failing to find as a matter of law that Frances R. Hogan lost her status as a wholly dependent person under Md.Ann. Code art. 101, § 36(8) by virtue of her thirty-three months of employment after the death of her husband; and

II.   Whether the Circuit Court for Baltimore County erred by failing to provide Linder Crane Service Company and the Subsequent Injury Fund with a credit for the thirty-three months that Frances R. Hogan was employed after her husband's death.

## FACTS

Joseph Hogan, Jr. died February 10, 1985 due to injuries sustained in an automobile accident which occurred while he was working for his employer, Linder Crane Service Company (Linder Crane). He was survived by his wife, Frances, appellee, and his son, Kelly, age sixteen. During their marriage, Joseph supported the family while Frances maintained the home. About two months after Joseph died, on April 3, 1985, appellee began working as a clerk at the

---

1.   Md.Ann.Code art. 101, § 36(8) (1984) was recodified without substantive change as the present Md.Ann.Code art. 101, § 36(7) (1990).

Linen Locker for a wage of $3.35 per hour. Appellee worked her way up to manager where she made approximately $260.00 per week. On September 3, 1985, appellee filed her claim for Worker's Compensation benefits pursuant to § 36(8).[2] The claim was contested by appellants. After a hearing, the Worker's Compensation Commission (Commission) found appellee to be wholly dependent and awarded her $45,000.00 and further benefit payments as provided under § 36(8)(a), to be paid half by Linder Crane and half by the Subsequent Injury Fund (Fund). Linder Crane paid its share of the $45,000.00 to appellee by check dated December 30, 1987, and the Fund paid its share at approximately the same time. On January 15, 1988, appellee quit her job at the Linen Locker. After the $45,000.00 was paid, appellants stopped making benefit payments.

On April 27, 1988, appellee filed a claim with the Commission to have the benefit payments reinstated. A hearing was held before the Commission and, in an order dated July 7, 1988, the Commission found that "the fact that the claimant-widow [appellee] was forced to seek employment in order to live, by virtue of the dispute about compensability, does not abate her total dependency as of the date of the injury," and ordered that appellants continue to make benefit payments of $155.50 per week to appellee.[3]

The decision of the Commission was appealed to the circuit court. The parties filed cross-motions for summary judgment. After a hearing, the court denied all motions on the ground that there was a genuine dispute as to whether appellee terminated her employment because she was medically unable to work. Subsequently, appellee filed answers to interrogatories propounded by the Fund. Appellee responded that she did not stop working because she was physically unable to continue.

---

2. *See, supra* note 1.

3. The payments were reduced to $130.50 per week for 150 weeks to provide for payment of attorney's fees.

After appellee filed her responses, the parties again filed cross-motions for summary judgment. At the conclusion of the hearing on these motions, the court stated that whether benefit payments would be reinstated pursuant to § 36(8) turns on whether appellee has become self-supporting and not whether she is capable of being self-supporting. The court then found that it was undisputed that appellee was not working at the time the Commission continued her benefits and that she did not work during her marriage. Based on these findings, the court granted summary judgment for appellee.

## DISCUSSION

### I.

Pertinent to the issues are the following provisions of § 36(8)(a):

If a surviving wife, husband, or child continues to be totally dependent after the total amount of $45,000.00 has been paid, further payments to the surviving wife, husband, or child shall be paid at the same weekly rate during his or her total dependency. If a surviving, wife, husband, or child except as set forth in paragraph (d) [4] herein, who is wholly dependent at the time of death becomes thereafter wholly or partially self-supporting, payments shall nevertheless continue until the total sum of $45,000.00 has been paid, and thereafter further benefits shall cease. It is the intention herein that a surviving wife or husband who is wholly dependent at the time of death shall receive at least the total sum of $45,000.00, even though she or he becomes wholly or partially self-supporting before the sum is paid. The Commission has continuing jurisdiction to determine whether the surviving wife, husband, or child has become wholly or partially

---

4. § 36(8)(d), now codified as § 36(7)(d), concerns benefits to surviving children which is not at issue *sub judice.*

self-supporting, and to suspend, terminate or reinstate suspended or terminated payments of compensation.

Appellants contend that appellee's temporary employment made her "partially self-supporting" and no longer entitled to benefits after she was paid the $45,000.00 award. We disagree and explain.

■ The question of whether Frances was totally dependent upon Joseph in April 1988, after she left her employment of thirty-three months, is for the finder of fact unless the facts and the inferences that can be drawn from them are undisputed at which point the question becomes one of law for the court and may be decided on a motion for summary judgment. Md.Rule 2–501; *Johnson v. Cole*, 245 Md. 515, 521, 226 A.2d 268 (1967); *Syme v. Mark Rentals, Inc.*, 70 Md.App. 235, 237–9, 520 A.2d 1110 (1987).

■ The Worker's Compensation statute should be liberally construed so that any ambiguity, uncertainty or conflict is resolved in favor of the claimant, in order to effect the statute's benevolent purposes.[5] *R & T Construction v. Judge*, 82 Md.App. 700, 708, 573 A.2d 96, *cert. granted*, 321 Md. 46, 580 A.2d 1066 (1990); *Beth.-Sp. Pt. Shipy'd v. Hempfield*, 206 Md. 589, 594, 112 A.2d 488 (1955); *Beth.-Fair. Shipy'd v. Rosenthal*, 185 Md. 416, 425, 45 A.2d 79 (1945).

In the case *sub judice*, the pertinent facts are undisputed. Frances was wholly dependent upon Joseph for the twenty years prior to his death. After his death, Frances then worked for thirty-three months, having no other source of income. She resigned from her employment after she received her Worker's Compensation benefits, and she was unemployed at the time of the Commission hearing which continued her benefits.

---

**5.** The facts in the case *sub judice* are not disputed. The only issue is whether, under the Workers' Compensation statute, Frances qualified as a dependent; it is in the determination of this legal issue that a liberal construction of the Workers' Compensation Act is required.

■ Generally, the test for dependency is whether the claimant relied upon the earnings of the worker under circumstances which indicate that the worker intended to furnish that support. *Meyler v. Mayor and City Council,* 179 Md. 211, 217, 17 A.2d 762 (1941). That the claimant has the ability to be self-supporting does not preclude her from being wholly dependent. *Id.* "[T]here is no provision in the statute requiring that a person must be incapable of supporting himself before he can be dependent, and there is no reason to hold that dependency should be so restricted in its meaning." *Id.* (citation omitted). Therefore, a claimant may be wholly dependent though the dependency resulted from an agreement between the claimant and the worker, even though the claimant might otherwise have been able to be self-supporting. *Id.* at 217–18, 17 A.2d 762.

■ The undisputed evidence *sub judice* showed that, prior to her employment at the Linen Locker, Frances had not worked since 1966. She and Joseph agreed that she should quit her job and stay home with the children while he supported the family. This was the arrangement at the time of Joseph's death. Approximately two months later, Frances began to work to support herself and her son. She subsequently filed for Worker's Compensation benefits. When she received them, she quit her job.

Frances' ability to work will not prevent her from being wholly dependent. Moreover, the fact that Frances actually earned a salary for thirty-three months will not prevent her from continuing to be deemed wholly dependent, once she terminated her employment. The courts have been reluctant to deprive a claimant of the rights of a wholly dependent, when otherwise entitled thereto, on account of temporary employment which was not intended to alter the dependency of the claimant on the worker.

In *Larkin v. Smith,* 183 Md. 274, 282, 37 A.2d 340 (1944), the Court stated the general rule that temporary gratuitous services rendered by others or occasional financial assistance received from other sources did not deprive a claimant

from being considered wholly dependent upon the deceased. The Court applied this general rule in two subsequent cases where it upheld the finding that a wife was wholly dependent upon her deceased husband despite her temporary employment.

In *Rosenthal*, 185 Md. 416, 45 A.2d 79, the claimant was employed at the time of her husband's death. During their more than twenty years of marriage, she was completely supported by her husband, but began to work outside the home approximately one year before his death. The wife testified that

> the only reason she took employment was because her boy was in the Navy and she was worried and wanted to occupy her mind. Her daughter was in school. She had no relatives in Baltimore, and she only intended to work until her son came home, because her husband made a living for her.

*Id.* at 423, 45 A.2d 79. The Commission determined that the wife was totally dependent on the husband and this was affirmed by a jury verdict in the Superior Court of Baltimore City, now the Circuit Court for Baltimore City. The Court of Appeals affirmed, holding that there was a dispute as to the inference to be drawn from the facts and the facts could support the jury's finding. *Id.* at 425–27, 45 A.2d 79.

In *Wash. Sub. San. Com. v. O'Donnell*, 208 Md. 370, 118 A.2d 674 (1955), the issue was whether a son was wholly dependent on the father when the mother had resumed steady work approximately eighteen months before the father's death and continued to work for a short time thereafter. The facts showed that after their marriage in 1933, the mother worked only occasionally until 1947 when she stopped completely. The son was born in 1934. The income of the father, a carpenter, supported the family until 1951 when he and his wife decided to build a new house and agreed that the most economical and feasible plan was for the father to build the house on a full-time basis and for the mother to return to steady work as a nurse. In May 1952, the house was sufficiently completed to be occupied and the

father returned to work at the Washington Suburban Sanitation Commission. He continued to build the house as his time permitted. When the father was fatally injured in November 1952, the mother was still employed. She testified that she had planned to stop working the next month and that the father was the son's sole support. *Id.* at 372–73, 118 A.2d 674. The Commission held that the son was wholly dependent on the father and the circuit court affirmed. *Id.* at 374, 118 A.2d 674. The Court of Appeals also affirmed. The Court concluded that the wife's earnings before the family moved into their new house were, in effect, a contribution toward its construction and thus did not alter her status as a dependent of the husband. Her earnings, after the family moved into their new house, were used to pay the oil and electric bills. This made more of the husband's money available to complete the house. This also did not alter the wife's wholly dependent status because her contributions came within the definition of temporary or occasional financial assistance. *Id.* at 376, 118 A.2d 674. Because the mother was held to be wholly dependent on the father, the son also was determined to be wholly dependent on the father. *Id.* at 376–77, 118 A.2d 674. *See also* Pressman, *Workmen's Compensation in Maryland* § 3–11(3) (1970).

■ Based on a benevolent reading of § 36(8) and the case law, Frances' temporary employment in the case *sub judice* will not preclude her from wholly dependent status. The only evidence before the court demonstrated that Frances began to work out of necessity which, by itself, would not alter the arrangement that existed prior to Joseph's death—that he supported the family and she maintained the home. We find Frances' need to earn a salary at least as great as those of the wives in *Rosenthal* and *O'Donnell,* both of whom were employed at the time of the death of their husbands but, nevertheless, were found to be wholly dependent because their employment was only temporary. When Frances finally received her Worker's Compensation benefits, her financial situation no longer required that she

earn a salary and she returned to her previous occupation as homemaker. Thus, at the Commission hearing, appellee had no income other than the Worker's Compensation benefits. Under these circumstances, we find no error in the court's grant of summary judgment in favor of appellee.

## II.

Whether appellants are entitled to a reimbursement for the money Frances earned during her thirty-three months of employment was raised for the first time on appeal. Because it was not raised in or decided by the trial court, we will not decide that issue. Md.Rule 8–131(a); *Pressman v. Accident Fund,* 246 Md. 406, 415, 228 A.2d 443 (1967) ("The reviewing court considers and passes only on matters covered by the issues raised and decided below....").

JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.