705 A.2d 1175

**BEVERAGE CAPITAL CORPORATION, et al.**

v.

**Patricia MARTIN, et al.**

No. 261, Sept. Term, 1997.

Court of Special Appeals of Maryland.

Feb. 25, 1998.

Alan M. Carlo (Leslie W. Gawlik, Mason, Ketterman & Morgan, Baltimore, on the brief), for appellants, Beverage and Centennial.

Nancy L. Harrison, Annapolis, on the brief for appellants, Sun Dun and American Manufacturers.

W. John Vernon and Lord & Whip, P.A., Baltimore, on the brief, for appellants, Great Distribution and Niagara Fire & Marine Ins. Co.

Michael D. Steinhardt (Forman & Steinhardt, P.A., on the brief), Glen Burnie, for appellees.

Argued before CATHELL,* SALMON and SONNER, JJ.

SALMON, Judge.

Maryland Code (1991 Repl.Vol.), section 9–681 of the Labor and Employment Article ("LE") reads, in pertinent part, as follows:

(c) *Duration of payment—In general.*—Except as otherwise provided in this section, the employer or its insurer shall pay the weekly death benefit:

(1) for the period of total dependency; or

(2) until $45,000 has been paid.

(d) *Same—Surviving spouse who remains wholly dependent.*—If a surviving spouse who was wholly dependent at the time of death *continues to be wholly dependent* after $45,000 has been paid, the employer or its insurer shall continue to make payments to the surviving spouse at the

---

* Cathell, J., now a member of the Court of Appeals, participated in the conference and decision of this case while a member of this Court; he participated in the adoption of this opinion as a member of this Court by special designation.

same weekly rate during the total dependency of the surviving spouse.

(e) *Same—Surviving spouse who becomes self-supporting.*—If a surviving spouse *who is wholly dependent* at the time of death becomes wholly or partly self-supporting before $45,000 has been paid, the employer or its insurer shall continue to pay death benefits until $45,000 has been paid.

* * *

(j) *Continuing jurisdiction of commission.*—The Commission has continuing jurisdiction to:

(1) *determine whether a surviving spouse or child has become wholly or partly self-supporting;*

(2) suspend or terminate payments of compensation; and

(3) reinstate payments of compensation that have been suspended or terminated.

(Emphasis added.)

The major issue in this case requires us to interpret the phrase "continues to be wholly dependent" as used in LE § 9–681(d). To be partially or wholly dependent, one must, of course, be dependent on some payor. The parties in this case are at odds as to the identity of the payment source upon whom the surviving spouse must be dependent.

## I. FACTUAL BACKGROUND

Chester Martin was killed in a helicopter crash on January 14, 1992. At the time of his death, he was acting in the course of his employment for three employers, i.e., Beverage Capital Corporation; Great Distribution and Warehousing, Inc.; and Sun Dun, Inc. ("the employers"). He was not, however, an ordinary employee. Mr. Martin was the sole owner of Sun Dun, Inc., a stockholder as well as the president of Beverage Capital Corporation, and the president of Great Distribution and Warehousing, Inc. All Mr. Martin's employers carried Maryland Workers' Compensation insurance, which provided

his employers with Workers' Compensation insurance for the subject accident.[1]

Mr. Martin was survived by Patricia Martin, his wife of fifteen years. No children were born of the marriage.

From the time of the Martins' marriage on July 2, 1976, until June of 1987, Mrs. Martin worked as a receptionist for Giant Food and earned approximately $18,000 per year. In the summer of 1987, Mrs. Martin left her job because her husband "wanted her to stay home." In exchange for her agreement to give up her job at Giant, Mr. Martin, as the majordomo of Sun Dun, Inc., agreed to put his wife on the payroll of that corporation with the understanding that she would do no work. Accordingly, from 1987 until 1992, Mrs. Martin was shown on the books as an employee of Sun Dun, Inc., receiving approximately $40,000 annually. During the term of her "employment," she performed no services for Sun Dun, Inc. After Mr. Martin's death, Mrs. Martin ceased to receive paychecks from her "employer."

In 1990, the Martins' combined income was $357,423, consisting of Mr. Martin's salaries ($151,504), Mrs. Martin's salary of approximately $38,000, and dividends and miscellaneous income of over $150,000. In 1991, Mrs. Martin began a sideline business selling business forms. Most of her customers were either businesses owned by her husband or accounts that her husband helped her obtain. In the year 1991, Mrs. Martin earned only $4,246 from her job selling forms. The family income, however, totaled $230,338.

Mr. Martin was alive only for the first two weeks of 1992. The combined earnings of Mr. and Mrs. Martin for that year were $209,769. Of that sum, Beverage Capital and Sun Dun, Inc., paid Mrs. Martin $146,172, which represented the balance of what Mr. Martin's salaries would have been had he

---

1. The Niagara Fire and Marine Insurance Company insured Great Distribution and Warehousing, Inc.; Centennial Insurance Company was the carrier for Beverage Capital Corporation; and Sun Dun, Inc., was insured by American Manufacturers Mutual Insurance Company. All three of these insurers are appellants in this appeal.

lived for the entire year. Mrs. Martin personally earned only $3,736 in 1992 because, due to Mr. Martin's death, Sun Dun, Inc., stopped paying her after January 14, 1992. In 1993, Mrs. Martin received payments from her husband's employers in the amount of $88,230.65, but thereafter received nothing from these corporations.

The Maryland Workers' Compensation Commission (the Commission) held a hearing on January 21, 1994, to determine if Mrs. Martin had been "wholly dependent" on her husband at the time of his death. The Commission found that she had been and ordered that the employers/insurers pay her death benefits at the rate of $475 per week, retroactive to January 15, 1992. Pursuant to LE § 9–681, the payments were to be made until Mrs. Martin had been paid $45,000.[2]

By the end of January 1994, the employers/insurers had paid Mrs. Martin the $45,000 ordered. They refused, however, to continue to make payments to her. Mrs. Martin filed issues with the Commission, alleging that she remained wholly dependent, and therefore sought continued payments of death benefits. The Commission heard testimony on this issue, and on August 22, 1995, found that Mrs. Martin remained wholly dependent and ordered the employers/insurers to continue making payments of death benefits. The employers/insurers filed a petition for judicial review in the Circuit Court for Anne Arundel County. Both sides agreed that there were no disputes as to material facts, and the matter was heard on cross-motions for summary judgment. Among other documents, federal tax returns for the years 1990–1995 were considered by the motions court.

The tax returns showed that in 1993 Mrs. Martin became an independent contractor brokering Evian Water, Crystal Light, and Pennsylvania Dutch Birch Beer to Giant Food for the Canada Dry Corporation. Mrs. Martin earned, after deduction for business expenses, $11,249.50 in 1993 in her brokering

---

**2.** Due to a deduction for attorneys' fees, the employers/insurers paid Mrs. Martin at the rate of $426.26 per week for 94.73 weeks.

business. In 1994, after expenses, she earned $9,651 in that business; and in 1995, she earned, after expenses, $15,879.[3]

In the circuit court, it was undisputed that Mrs. Martin lived on the amount she earned as an independent broker together with the monies she received from the Workers' Compensation carriers. Mrs. Martin owned her own home, which was not encumbered by a mortgage, and owned stock that generated dividends, which she reinvested.[4]

In the circuit court, as well as in the hearing before the Commission, the sole issue to be decided was whether Mrs. Martin continued to be wholly dependent within the meaning of LE § 9–681(d) after the $45,000 had been paid by the insurers. The employers/insurers contended in the circuit court that the uncontroverted proof showed that Mrs. Martin was only partially dependent on the Workers' Compensation payments she received and, therefore, under LE § 9–681(d) she was no longer entitled to receive any compensation.

The trial court, in a written opinion, rejected the employers/insurers' argument and affirmed the award of the Commission. This timely appeal followed in which the employers/insurers raise one question:

> Did the lower court err in holding that Martin remained wholly dependent as a matter of law where the uncontradicted evidence established that her earnings after her husband's death were not temporary, occasional, or minor?

---

3. The trial judge, in his written opinion, states that Mrs. Martin earned $7,763 in 1994. This figure is incorrect. Schedule C, of Mrs. Martin's tax returns, shows that the gross receipts for her brokering business was $19,466 for 1994. After deduction of expenses, her net profit was $9,651. The trial court's figure for 1995 was also incorrect. Schedule C of Mrs. Martin's tax returns for 1995 shows that her gross income from her brokering business was $24,836 and that her net profit was $15,879. In his written opinion, the trial judge arrived at lower figures by considering deductions for an IRA and other federal deductions that had nothing to do with her total income.

4. Dividends were modest if compared to the Martins' investment income during the last two years of Mr. Martin's life. In 1995, her dividend income was $3,305; in 1994, dividend income was $1,040; and in 1993, it was $3,703.

We answer this question affirmatively and reverse the decision of the circuit court.

## II. ANALYSIS

■ "[T]he cardinal principle of statutory construction is to determine the legislative intent. To do this we look first to the language in the statute." *Ryder Truck Lines v. Kennedy,* 296 Md. 528, 535, 463 A.2d 850 (1983) (citations omitted). If the statutory language is clear, we ordinarily need look no further. Nevertheless,

> [w]hile the language of the statute is the primary source for determining legislative intention, the plain meaning rule of construction is not absolute; rather, the statute must be construed reasonably with reference to the purpose, aim, or policy of the enacting body. The Court will look at the larger context, including the legislative purpose, within which statutory language appears. Construction of a statute which is unreasonable, illogical, unjust, or inconsistent with common sense should be avoided.

*Tracey v. Tracey,* 328 Md. 380, 387, 614 A.2d 590 (1992) (citations omitted); *accord Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 73–75, 517 A.2d 730 (1986); *Barr v. Barberry Bros., Inc.,* 99 Md.App. 33, 38, 635 A.2d 64 (1994).

■ When a worker is killed in the course of his or her employment, it is incumbent upon the Commission to determine whether the surviving spouse (or other dependent) is wholly dependent at two discrete points in time. The Commission determines whether the claimant was wholly dependent at the time of the worker's death. *See* LE § 9–679(1); *see also Cline v. Mayor of Baltimore,* 13 Md.App. 337, 339, 283 A.2d 188 (1971), *aff'd,* 266 Md. 42, 291 A.2d 464 (1972). Under the Maryland Workers' Compensation Act (the Act), in order to be considered "wholly dependent" upon the earnings of a deceased worker at the time of the worker's death, the claimant must have no other consequential source or means of maintenance in addition to what he or she received from the deceased worker.[5] *Johnson v. Cole,* 245 Md. 515, 520, 226

---

5. If the Commission determines that the claimant is only partially dependent upon the worker at the time of his or her death, LE § 9–682 controls. That section reads, in pertinent part:

A.2d 268 (1967) (citing *Larkin v. Smith,* 183 Md. 274, 37 A.2d 340 (1944)). A claimant will be considered wholly dependent even though he/she receives temporary gratuitous services, occasional financial assistance, or other minor benefits from sources "other than the deceased worker" so long as the aid from other sources or other benefits "do[es] not substantially affect or modify [the dependent's] status toward the deceased employee." *Johnson,* 245 Md. at 520–21, 226 A.2d 268 (citing *Superior Builders, Inc. v. Brown,* 208 Md. 539, 543, 119 A.2d 376 (1956)). In making the initial determination as to whether a surviving spouse is "wholly dependent," there is no ambiguity in the statute as to *what* the surviving spouse must be wholly dependent upon because the statute specifically spells this out. *See* LE § 9–681(a) ("If there are individuals who were wholly dependent on a deceased covered employee at the time of death resulting from an accidental personal injury ... [the employer/insurer] shall pay benefits in accordance with this section.").

---

(a) *In general.*—If there are no individuals who were totally dependent on the deceased covered employee at the time of death, but there are individuals who were partly dependent, the employer or its insurer shall pay death benefit in accordance with this section.

(b) *Amount of death benefit.*—(1) The maximum weekly death benefit payable under this section shall equal two-thirds of the average weekly wage of the deceased covered employee, but may not exceed two-thirds of the State average weekly wage.

(2) The weekly death benefit payable under this section shall be the percentage of the maximum weekly death benefit under paragraph (1) of this subsection that:

(i) the weekly earnings of each partly dependent individual bear to the average weekly wage of the deceased covered employee; and

(ii) does not exceed the maximum weekly death benefit.

(c) *Duration of payment—In general.*—Except as otherwise provided in this section, the employer or its insurer shall pay the weekly death benefit:

(1) for the period of partial dependency; or

(2) until $17,500 has been paid.

(d) *Same—Surviving spouse who remarries.*—(1) Subject to paragraph (2) of this subsection, if a surviving spouse who is partly dependent remarries and does not have dependent children at the time of the remarriage, the employer or its insurer shall make payments to the surviving spouse for 2 years after the date of the remarriage.

■ If the Commission makes an initial determination that the claimant is wholly dependent upon the deceased employee, the surviving spouse has a right under the statute to the continuation of death benefits after the employer/insurer has made weekly payments totaling $45,000 only if the claimant is able to show that he or she "continues to be wholly dependent." [6] LE § 9–681(d). The statute does not explicitly say upon what the surviving spouse must continue to be dependent. The employers/insurers argue that LE § 9–681(d) should be interpreted to mean "continues to be wholly dependent upon Workers' Compensation death benefits." We agree with this interpretation.

---

**6.** Maryland's Workers' Compensation statute differs from that in most states. As Professor Larson wrote:

> Once rights as a dependent under an award have been acquired, the majority—but by no means unanimous—view is that they are not lost by a subsequent change in the dependent's financial position, nor by any change short of the events, such as remarriage or attainment of a specified age, expressly terminating compensation by statute. *Getting a self-supporting job*, for example, or an inheritance from the deceased or others, or drawing Social Security benefits, or being adopted, or contracting a marriage later annulled, or living with and being supported by a man without benefit of marriage, *will not interrupt the right* to benefits as a dependent. While this may produce occasional results inconsistent with the spirit and purpose of compensation protection, the administrative convenience of crystallizing of rights as of some definite date once and for all probably counterbalances this objection.

2 Arthur A. Larson, *The Law of Workers' Compensation* § 64.43, at 11–242 (1992) (emphasis added) (footnotes omitted). This general rule does not apply, however, if the applicable statute provides for the termination of benefits upon the happening of certain events or the expiration of a given time period. To illustrate, Arizona allows parents who are wholly dependent upon a worker to receive "twenty-five percent of the average monthly wage of the deceased *during* dependency." Ariz.Rev.Stat. Ann. § 23–1046(A)(5) (emphasis added). Vermont entitles surviving parents of a deceased worker, under certain circumstances, to receive compensation *"during* the continuation of a condition of actual dependency." Vt. Stat. Ann. tit. 21, § 635 (emphasis added). Florida provides for compensation to be paid to dependent parents of deceased workers *"during* the continuance of dependency." Fla. Stat. Ann. § 440.16 (West 1979). "Th[ese] [examples] create[] an exception to the general rule ... similar to the express exception for remarriage or attainment of majority." Larson, *supra*, at § 64.43 n. 40 (citing *Terrinoni v. Westward Ho!*, 418 So.2d 1143 (Fla.Ct.App.1982)).

Instead of providing us with an exact interpretation, appellee merely hints at an alternative interpretation and then proceeds to provide us with a formula she contends should be utilized in determining whether a claimant continues to be wholly dependent. Relying almost entirely upon cases dealing with the issue of whether the claimant was wholly dependent on the deceased worker at the time of the worker's death, Mrs. Martin contends that we should compare the amount earned by the worker at the time of death with the amount the surviving spouse earns after $45,000 has been paid. According to Mrs. Martin, if the amount earned after the $45,000 has been paid is "minuscule" when compared with the amount earned by the deceased worker, then the claimant remains "wholly dependent" upon the deceased employee. She argues:

> [Maryland caselaw] ... demonstrates that if the income that a claimant receives is a small percentage of the amount of support given to the claimant from the deceased employee, over a long period of time, the claimant is still dependent on the deceased employee despite having an income.

[Appellee] submits that the amount of money that she has been earning since 1993 (approximately 3 to 9% of her husband's 1991 income)[7] is negligible in terms of the total picture of the income that she received from her husband prior to the time of death. Unfortunately, the statute does not define what total dependency means. However, in today's society where a family unit is held together by two income wage earners,[8] it is patently unfair to penalize the

Maryland's "continues to be wholly dependent" language creates such an exception.

**7.** The 3 percent to 9 percent calculations are based on the premise that Mr. Martin's salaries from his three employers was $148,000 in 1991 and that the income figures in appellee's brief are correct. Earlier in her brief, Mrs. Martin calculated that her income for 1993, 1994, and 1995 compared with her husband's income for 1991 was: 8 percent in 1993 (a correct percentage); 5 percent in 1994; and 9 percent in 1995. Mrs. Martin, like the trial judge, used the wrong income figures for 1994 and 1995. In 1994, Mrs. Martin earned $9,651, which equals 6.5 percent of $148,000. In 1995, she earned $15,879, which is 10.72 percent of $148,000.

**8.** The Martin family was not "held together" by two income wage earners at the time of Mr. Martin's death. If it had been, Mrs. Martin

spouse of the deceased worker if he or she makes substantially less income or negligible income as compared to the deceased by discontinuing compensation benefits.

Although she does not say so explicitly, Mrs. Martin apparently reads LE § 9–681(d) as if it said "death benefits are to continue if, after $45,000 has been paid, the surviving spouse continues to be dependent upon the past income of the deceased worker." As stated earlier, "[c]onstruction of a statute which is unreasonable, illogical, unjust, or inconsistent with common sense should be avoided." *Tracey,* 328 Md. at 387, 614 A.2d 590. If we were to adopt appellee's reading of LE § 9–681(d), persons whose spouses earn huge incomes would be more likely to be able to convince the Commission that they continue to be wholly dependent than those with modest income. This would produce an illogical and unjust result and one at odds with the purpose of the Act.

To illustrate: Suppose Spouse 1 and Spouse 2 are wholly dependent on the incomes earned by their husbands and both husbands die on the same date. Spouse 1's husband earns $320,000 per year and Spouse 2's husband earns $40,060 annually. Both surviving spouses receive $475 per week in death benefits pursuant to LE § 9–681. If, after the insurer has paid $45,000 in death benefits to both Spouse 1 and Spouse 2, both get a job paying $15,000 per year, Spouse 2, under appellee's formulation, would have a much more difficult time convincing the Commission that she continues to be wholly dependent because her $15,000 annual income is 37.5 percent of the amount that her husband earned when he lived. On the other hand, Spouse 1, whose husband made eight times as much as Spouse 2's husband, could argue that her current income is only 5 percent of her husband's former salary—and thus, in comparison, minuscule. The Act was "passed to promote the general welfare of the State and to prevent the State and its taxpayers from having to care for injured work[ers] and their dependents" when under common law

---

would not have been deemed "wholly dependent" on Mr. Martin by the Commission when it made its initial decision.

they would have received nothing. *Paul v. Glidden Co.,* 184 Md. 114, 119, 39 A.2d 544 (1944). Given that purpose, it scarcely could have been the intent of the General Assembly that payments should continue for widows of workers who were rich but be denied to similarly situated widows of workers with lesser means. Application of appellee's formula would produce absurd results.

Aside from the results that would be obtained, there is no language in § 9–681(d) that supports the argument that the Commission should compare what the surviving spouse now earns with the amount the deceased worker used to earn. Normally, what a surviving spouse "continues to be dependent upon" after $45,000 has been paid is that amount of income he or she now *receives,* not income he or she once received from the worker. The facts in the case at hand illustrate this point. Mrs. Martin admits in her brief that she did not, after 1993, "continue to be dependent" on salary or other monies her husband was paid when he lived. As mentioned earlier, what Mrs. Martin is currently dependent upon is the money she receives from Workers' Compensation in death benefits, plus her earnings from her brokerage business.

█ Workers' Compensation benefits constitute an "employment-related benefit which replaces the common law right of employees to bring tort actions against their employers for job-related personal injuries." *Queen v. Queen,* 308 Md. 574, 585, 521 A.2d 320 (1987). In one sense, Mrs. Martin, like other recipients of Workers' Compensation death benefits, does indirectly receive monies earned by her deceased spouse. This is true because a derivative benefit of holding a job is the right of the worker's dependent to receive Workers' Compensation death benefits should the worker be killed by accident or occupational disease while in the course of his or her employment. Thus, if a surviving spouse is wholly dependent upon weekly Workers' Compensation death benefits after $45,000 has been paid, he or she can be said to be still wholly dependent on the decedent, but only in the narrow sense that

the payments are a derivative consequence of the deceased worker's labor.

We now turn to the issue of whether Mrs. Martin was wholly dependent on the Workers' Compensation benefits she received after the employers/insurers had paid her $45,000 in death benefits. As noted earlier, in 1994 Mrs. Martin's net profit, after deduction for business expenses, from her brokerage business was $9,651; in 1995 her net profit from the business was $15,879. The amount of Workers' Compensation benefits Mrs. Martin received in 1994 was $525 weekly, and by 1995 it had risen to $540.[9]

The parties agree that the term "wholly dependent" as used in subsection d of LE § 9–681 is the converse of the term "partially self-supporting" as used in LE § 9–681(e) and LE § 9–681(j)(1). Therefore, if a party is "partially self-supporting," then that party no longer can be considered wholly dependent upon the Workers' Compensation benefits.

The only reported Maryland case dealing with the issue of whether a claimant "continues to be wholly dependent" after the sum of $45,000 has been paid is *Linder Crane Service Co. v. Hogan,* 86 Md.App. 438, 586 A.2d 1290 (1991). At the time *Linder Crane* was decided by the trial court, the predecessor to LE § 9–681 read, in pertinent part, as follows:

---

**9.** LE § 9–603 provides that the maximum compensation paid shall be adjusted as of January 1 of each calendar year. Average weekly wage is calculated taking the average wage of persons receiving Maryland unemployment benefits. On January 1, 1992, the Commission was advised that the average weekly wage of workers covered by Maryland unemployment for the fiscal year ending June 30, 1991, was $475. Pursuant to LE § 9–681, a wholly dependent spouse of a person who died in the course of his employment is entitled to receive two-thirds of the employee's average weekly wage, not to exceed 100 percent of the State's average weekly wage. Therefore, in 1992, Mrs. Martin received $475 per week. Thereafter the average weekly wages in Maryland were as follows: 1993—$510 per week; 1994—$525 per week; and 1995—$540 per week. Because Mrs. Martin's husband earned far more than the average weekly wage, she was entitled to receive death benefits equal to the average weekly wage so long as she continued to be wholly dependent.

[A]nd to continue . . . to be paid during total dependency but not to exceed $45,000.00, except as otherwise provided in this section. If a surviving wife, husband, or child *continues to be totally dependent* after the total amount of $45,000.00 has been paid, further payments to the surviving wife, husband, or child shall be paid at the same weekly rate during his or her total dependency. If a surviving wife, husband, or child, . . . who is wholly dependent at the time of death *becomes thereafter wholly or partially self-supporting,* payments shall nevertheless continue until the total sum of $45,000.00 has been paid, and thereafter further benefits shall cease. It is the intention herein that a surviving wife or husband who is wholly dependent at the time of death shall receive at least the total sum of $45,-000.00, even though she or he becomes wholly or partially self-supporting before that sum is paid. *The Commission has continuing jurisdiction* to determine whether the surviving wife, husband, or child has become wholly or partially self-supporting, and to suspend, terminate or reinstate suspended or terminated payments of compensation.

Md.Code (1957, 1973 Cum.Supp.), Art. 101, § 36(8)(a) (emphasis added).

In the *Linder Crane* case, a widow, Mrs. Hogan, was totally dependent on her husband at the time of his death. *Linder Crane,* 86 Md.App. at 440, 586 A.2d 1290. About two months after Mr. Hogan's death, the Widow Hogan went to work as a clerk at a store. She later became store manager and earned approximately $260 weekly. After working at the store for 33 months, Mrs. Hogan received the $45,000 she was entitled to under the Workers' Compensation statute, and upon receipt of the money, she quit her job. *Id.* When the insurer stopped paying benefits, Mrs. Hogan filed a claim with the Commission to have the benefit payments reinstated. The question presented in the *Linder Crane* case was whether Mrs. Hogan was "totally dependent" upon her husband at the time she filed her claim for additional Workers' Compensation benefits—which was after she left her job. *Id.* at 443, 586 A.2d 1290. Both the Commission and the trial court ruled that Mrs. Hogan

continued to be wholly dependent after $45,000 was paid.   In *Linder Crane* we agreed and said:

> Based on a benevolent reading of § 36(8) and the case law, [Mrs. Hogan's] temporary employment in the case *sub judice* will not preclude her from wholly dependent status. The only evidence before the court demonstrated that [Mrs. Hogan] began to work out of necessity which, by itself, would not alter the arrangement that existed prior to [Mr. Hogan's] death—that he supported the family and she maintained the home.   We find [Mrs. Hogan's] need to earn a salary at least as great as those of the wives in [*Bethlehem–Fair Shipyard v.*] *Rosenthal* [, 185 Md. 416, 45 A.2d 79 (1945),] and [*Wash. Sub. San. Com. v.*] *O'Donnell,* [208 Md. 370, 118 A.2d 674 (1955),] both of whom were employed at the time of the death of their husbands but, nevertheless, were found to be wholly dependent because their employment was only temporary.   When [Mrs. Hogan] finally received her Worker's Compensation benefits, her financial situation no longer required that she earn a salary and she returned to her previous occupation as homemaker.   Thus, at the Commission hearing, appellee had no income other than the Worker's Compensation benefits.   Under these circumstances, we find no error in the court's grant of summary judgment in favor of appellee.

*Linder Crane,* 86 Md.App. at 446–47, 586 A.2d 1290.

Although *Linder Crane* is distinguishable in many respects from the case at hand, one point is of interest, viz:  The *Linder Crane* Court looked to the income Mrs. Hogan received from Workers' Compensation benefits to determine whether she continued to be totally dependent after the amount of $45,000 had been paid.

To determine whether a claimant "continues to be wholly dependent" upon Workers' Compensation benefits after $45,-000 has been paid, it is useful to study cases dealing with the issue of whether a claimant was wholly or totally dependent on

a worker at the time of his/her death. We have reviewed those cases and none of them support appellee's position.

In *Larkin v. Smith*, 183 Md. 274, 37 A.2d 340 (1944), the claimant, Mrs. Smith, had a son, George, who died in the course of his employment. Mrs. Smith claimed that she was wholly dependent on George who, at the time of his death, contributed approximately $18 weekly for her support. Mrs. Smith was not employed when George died, although she had previously worked in a restaurant. After her son's death, Mrs. Smith's only regular source of income was from the sale of eggs from her seven hens. Although she no longer worked at the restaurant, she frequently stopped by to visit. Sometimes her former employer would give her food, and ofttimes Mrs. Smith would wash dishes, and her former employer would give her a dress or a pair of shoes in recompense. She never received money or food to take home with her.

In *Larkin*, the employer/insurer contested the determination that Mrs. Smith was wholly dependent on her son at the time of his death. They argued that the jury should be instructed that, if Mrs. Larkin received any support from anyone other than the decedent, she was not wholly dependent but merely partially dependent. The Court of Appeals disagreed, stating:

> This prayer is calculated to mislead the jury, because it does not define what is meant by support, and the jury might include as support, gratuitous contributions, or the trifling sale of eggs, or the interest in the home. We think that would be entirely too narrow a construction of the law.

*Id.* at 282, 37 A.2d 340. *Larkin* stands for the proposition that the receipt of trifling income will not destroy total dependency nor will the receipt of temporary or occasional assistance from others.

In *Bethlehem–Fairfield Shipyard, Inc. v. Rosenthal*, 185 Md. 416, 45 A.2d 79 (1945), the claimant, Mrs. Rosenthal, secured a war-time job at a shipyard in 1944, which was approximately one year before her husband's death. Prior to obtaining work, Mrs. Rosenthal had not worked in more than

twenty years and had been totally supported by her husband. Mrs. Rosenthal took the job because (1) she was worried about her son who had just entered the Navy and she needed something to distract her mind; and (2) she needed to occupy her time because she and her husband had just moved to Baltimore and she had no relatives or friends nearby. Mrs. Rosenthal's salary was approximately two-thirds that of her husband's while she worked at the shipyard. The court found that Mrs. Rosenthal was wholly dependent upon her husband because she had only planned to work until her son came home from war, and therefore, "[her] work was only temporary or occasional, and that her intention was to depend solely on her husband's income in the future as she had in the past." *Id.* at 426, 45 A.2d 79.

In the case of *Washington Suburban Sanitary Commission v. O'Donnell,* 208 Md. 370, 118 A.2d 674 (1955), the issue presented was whether a son was wholly dependent on his father even though his mother had resumed steady work approximately eighteen months before the father's death and his mother continued to work for a short time after his death. The father was the sole support of the family until 1951 when he and his wife decided to build a new house. The two agreed that the father would quit his job and build the house on a full-time basis and that the mother would return to steady work as a nurse. In May 1952, the father returned to his job at the Washington Suburban Sanitary Commission but continued to build the house as time permitted. When the father died in November 1952, the mother was still employed as a nurse; she testified, however, that at the time of her husband's death she had intended to stop working the next month. *Id.* at 372–73, 118 A.2d 674. The Court of Appeals affirmed the Commission's decision that the son was wholly dependent on the father. The Court reasoned that the wife's earnings were merely a contribution toward the construction of a house and thus did not alter her status as a dependent of the husband. The mother's earnings, after the family moved into their new home, were used to pay utility bills and thus made more of her husband's money available to complete the house. *Id.* at 376,

118 A.2d 674. The Court concluded that the mother's contribution came within the definition of temporary or occasional financial assistance to the son. *Id.*

In contrast to those cases in which the contribution of the survivor was deemed to be temporary or occasional, the Court of Appeals has consistently denied total dependency status to all survivors who made a consequential contribution to their own support. *Simmons v. B & E Landscaping Co.*, 256 Md. 13, 15, 259 A.2d 314 (1969); *Bituminous Constr. Co. v. Lewis*, 253 Md. 1, 3, 251 A.2d 888 (1969); *Johnson v. Cole*, 245 Md. at 520, 226 A.2d 268; *Mullan Constr. Co. v. Day*, 218 Md. 581, 147 A.2d 756 (1959); *Mario Anello & Sons, Inc. v. Dunn*, 217 Md. 177, 141 A.2d 731 (1958); *Toadvine v. Luffman*, 14 Md.App. 333, 340, 286 A.2d 790 (1972).

In *Mullan, supra*, Mrs. Day, a widow of a deceased worker, had worked for over fourteen years prior to her husband's death and earned approximately 50 percent of his salary. After her husband's death, Mrs. Day claimed that she was totally dependent on her husband because her salary had not been "pooled" with his. She also asserted that the money she earned was spent only on items for her own personal use, although, occasionally, it was used to pay overdue bills. In her testimony, however, she could only account for about $12 of her weekly salary of $28.50. The *Mullan* Court held that Mrs. Day was not totally dependent on her husband within the meaning of the Act and stated:

> An anomalous situation would ensue if a claimant could acquire the status of a total dependent merely by disclaiming the use of his earnings in or about the home or its affairs.... If she did not use the balance of her money to pay household bills, *she must have used it to partially support herself.*

*Mullan*, 218 Md. at 588, 147 A.2d 756 (emphasis added). The Court later added:

> As we have noted, the record shows (i) that the claimant, who had earned substantial wages prior to her illness, had *either partially supported herself* or contributed something

toward the household expenses, and (ii) that the claimant had returned to work and was *actually* working on the day her husband was fatally injured.

*Id.* at 590, 147 A.2d 756 (first emphasis added).

In *Anello, supra,* the surviving spouse had worked two and one-half years prior to her husband's death and earned $30 per week; her husband earned, at the time of his death, an average weekly wage of $90. *Anello,* 217 Md. at 180, 141 A.2d 731. The two pooled their resources and used the money to pay their bills. *Id.* The employer/insurer moved for a directed verdict on the ground that, as a matter of law, the claimaint/widow was not "wholly dependent" upon her husband. The motion was overruled, and the jury found that the widow was wholly dependent. The Court of Appeals reversed on the ground that the widow's earnings of $30 per week were "a consequential source" of her own maintenance and, therefore, she was not wholly dependent upon her husband as a matter of law. *Id.* at 181, 141 A.2d 731.

In *Toadvine, supra,* the question presented was whether the trial court erred in confirming the decision of the Commission that two minor children were totally dependent for their support upon their father at the time of his death from an accidental personal injury arising out of and in the course of his employment. *Toadvine,* 14 Md.App. at 335, 286 A.2d 790. The facts in *Toadvine* were undisputed. Barbara Luffman, the mother of the claimants, was regularly employed at the time of her husband's death and earned $3,500 per year working in a shirt factory. Her husband earned approximately $5,400 per year as a plumber. The entire earnings of both parties were pooled, and the monies were used in the home for the support and maintenance of the family, as well as for general expenses and upkeep of the home. *Id.* at 338, 286 A.2d 790. In an oral opinion, the trial court in *Toadvine* said as follows:

"[H]ere we have a situation with a father under a legal and moral obligation to support his minor children and actually throwing into a common fund his entire earnings,

along with those of the mother, which money went for the actual shelter, clothing, and food of the children. No accounting of who earned which dollar spent is had, nor should it be required. It is my feeling that the small amount contributed by the mother could do no more than form the basis of the holding that she was a partial dependent. I do not believe that it should go so far as to hold the mother made any substantial contribution toward the upkeep and maintenance of the children."

*Id.* at 339–40, 286 A.2d 790.

Judge Orth, speaking for the Court in *Toadvine*, reversed the decision of the Commission and the lower court and held that the evidence failed to support the trial judge's conclusion that the mother's earnings, which constituted about 40 percent of the total family income and was pooled with the father's earning and used in the home for the support and maintenance of the family, was not a consequential part of the children's maintenance so that the children were not, as a matter of law, totally dependent for their support upon their deceased father. *Id.* at 346–47, 286 A.2d 790.

The cases relied upon by appellee, in which the Court held that the claimant was not wholly dependent upon the deceased, were ones where the Court found that (1) the claimant had stopped working altogether at the critical point in time when dependency was to be decided (*Linder Crane, supra*), or (2) the claimant had a subjective intent to work only temporarily (*O'Donnell, supra*, and *Rosenthal, supra*), or (3) the claimant received only minuscule amounts of income from outside sources (*Larkin, supra*). Appellant has cited no case, and we have found none, where an appellate court in this state has found a claimant to be "wholly dependent" upon the decedent if the claimant had a "consequential source or means of maintenance in addition to what is received out of the earnings of the deceased." *Johnson, supra.*

In the case *sub judice*, after 1993, Mrs. Martin did have a consequential source of income in addition to the Workers' Compensation death benefits. Her employment was

not temporary. She has worked continuously since 1993 in her brokering business, and the amounts earned in her business were not minuscule when compared with the income she received from Workers' Compensation death benefits. In 1994, she was awarded $525 per week in death benefits and in that same year earned $185.60 ($9,651 divided by 52) weekly in her business, or 35 percent of the amount received in death benefits. In 1995, she was awarded $540 per week in benefits and earned approximately $305 ($15,829 divided by 52) per week, or 56 percent of the death benefits. As a matter of law, both of these sums constitute a "consequential source of income or maintenance in addition to that received" from the Workers' Compensation benefits. Thus, she was partially self-supporting and not "wholly dependent" upon Workers' Compensation benefits within the meaning of LE § 9–681(d).

In affirming the Commission, the trial judge focused upon the issue of whether Mrs. Martin could support herself on the amount that she earned in the brokering business if she did not receive Workers' Compensation benefits. Although this is a humane perspective, it is not supported by the language set forth in the Act.

**JUDGMENT REVERSED; CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR THE ENTRY OF AN ORDER REVERSING THE ORDER OF THE WORKERS' COMPENSATION COMMISSION. COSTS TO BE PAID BY APPELLEE.**