726 A.2d 728

Patricia MARTIN et al.

v.

BEVERAGE CAPITAL CORPORATION et al.

No. 60, Sept. Term, 1998.

Court of Appeals of Maryland.

March 25, 1999.

Michael D. Steinhardt (Forman & Steinhardt, P.A., Glen Burdie; Jonathan P. Kagan, Brassel & Baldwin, P.A., Annapolis), on brief, for petitioners.

Alan M. Carlo (Leslie W. Gawlik, Mason, Ketterman & Morgan, P.A.; W. John Vernon, Lord & Whip, P.A., Baltimore; Nancy L. Harrison, Law Offices of Nancy L. Harrison, Annapolis), on brief, for respondents.

Argued before BELL, C.J., and RODOWSKY, CHASANOW, RAKER, WILNER, JOSEPH F. MURPHY, Jr. (Specially Assigned) and RAYMOND G. THIEME, Jr. (Specially Assigned), JJ.

.CHASANOW, Judge.

In this appeal, we are asked to settle a dispute as to the identity of the payment source upon which a surviving spouse, in a workers' compensation death benefits case, must continue

to be dependent in order to receive additional benefits after the initial maximum award of $45,000 has been paid out. Specifically, we are called upon to determine whether the phrase "continues to be wholly dependent," as found in Maryland Code (1991 Repl.Vol.), Labor and Employment Article, § 9–681(d),[1] refers to an ongoing dependency on the deceased worker's wages or the generally lesser amount of workers' compensation benefits. Patricia Martin (Petitioner) contends that in ongoing dependency determinations, "continues to be wholly dependent" refers to the standard of living the claimant experienced while the deceased spouse was alive; thus, she has a continued dependency on her husband's income at the time of his death. Beverage Capital Corporation (Beverage Capital), Sun Dun, Inc. (Sun Dun), and Great Distribution and Warehousing, Inc. (Great Distribution) (Respondents)[2] argue, in accordance with the Court of Special Appeals, that this phrase refers to the surviving spouse's continued dependency on the workers' compensation death benefits initially granted.

For the reasons set forth below, we reverse the judgment of the Court of Special Appeals and affirm the Workers' Compensation Commission's (Commission) finding that Petitioner continued to be wholly dependent on her deceased husband within the meaning of the Workers' Compensation Act. In accordance with the Commission's interpretation of the statute and its findings of total dependency on the part of Petitioner, we hold that "continues to be wholly dependent" as found in § 9–681(d) refers to the surviving spouse remaining wholly dependent on the deceased spouse's income at the time of his or her death, and not the generally lesser amount of workers' compensation benefits. Thus, in

---

1. Unless otherwise indicated, all statutory references are to Maryland Code (1991 Repl.Vol.), Labor and Employment Article.

2. The other Respondents are Centennial Insurance Company, the workers' compensation insurer for Beverage Capital Corporation; American Manufacturers Mutual Insurance Company, the carrier for Sun Dun, Inc.; and Niagara Fire and Marine Insurance Company, the insurer for Great Distribution and Warehousing, Inc.

making ongoing dependency determinations, the amount earned by the deceased worker at the time of death must be compared with the amount the claimant earns after the initial $45,000 has been received. In this case, Mr. Martin, the deceased spouse, earned an average of $200,000 per year prior to his accident. In stark contrast is the average salary of Mrs. Martin, the surviving spouse, of approximately $15,000 per year. After Mrs. Martin received the initial $45,000, she was still earning approximately $15,000 per year; therefore, she "continues to be wholly dependent" if her circumstances have not changed since the initial dependency determination was made.

In the instant case, we need not attempt to define the exact point at which a claimant becomes either wholly or partially self-supporting after the initial $45,000 has been paid out. We leave to the legislature and future cases the task of determining the percentage or amount of the deceased spouse's average weekly income the claimant must earn in order to be found either wholly or partially self-supporting. With this holding we are adopting the Commission's interpretation and administration of the Act, which directs that Petitioner's workers' compensation death benefits will not suddenly cease when some specific point in time is reached, but will instead continue so long as her dependency remains; that is, until she remarries, dies, or the Commission decides that she has become wholly or partially self-supporting.

## I. BACKGROUND

The facts of this case are undisputed. On January 15, 1992, Chester Martin was operating a helicopter in the course of his employment with Beverage Capital, Sun Dun, and Great Distribution when it malfunctioned and he was tragically killed.[3]

---

**3.** There is a discrepancy in the record as to the exact date of Mr. Martin's death; it appears in some documents as January 15, and in others as January 14. In this opinion we cite the January 15 date, as this is the date the Workers' Compensation Commission referenced in its initial February 1, 1994, order.

At the time of his death, Mr. Martin held various executive positions with Beverage Capital, Sun Dun, and Great Distribution. He was President and a shareholder of Beverage Capital, the sole owner of Sun Dun, and President of Great Distribution.

Mr. Martin was survived by Mrs. Martin. The Martins were married on July 2, 1976, and no children were born of the marriage. At the time of the marriage, Mrs. Martin was employed with Giant Food, earning approximately $18,000 per year. In June 1987, Mrs. Martin resigned her job with Giant Food because Mr. Martin wanted her to stay home and not work anymore. So that she would not have to work outside the home, the Martins agreed that Mr. Martin would pay Mrs. Martin a salary from Sun Dun, but that she would not have to actually do any work for the company. In 1991, Mrs. Martin began a sideline business selling business forms. Most of her customers were either businesses owned by her husband or accounts that he helped her obtain. Mrs. Martin received a salary from Sun Dun until January 15, 1992, the date of Mr. Martin's death. After this date, the salary payments stopped.

For the two years prior to Mr. Martin's death, the Martins' finances were as follows:

| 1990 | — | Chester Martin Income | $151,504 | |
| | | Patricia Martin Income | 38,895 | (Sun Dun) |
| | | Total Family Income | 190,399 [4] | |
| 1991 | — | Chester Martin Income | $187,240 | |
| | | Patricia Martin Income | 38,852 | (Sun Dun) |
| | | | 4,246 | (Her job selling forms) |
| | | Total Family Income | 230,338 | |

A few months after Mr. Martin was killed, Mrs. Martin filed a dependency claim with the Commission stating that she was "wholly dependent" on her husband at the time of his death. A hearing was held on January 21, 1994, and on February 1, 1994, the Commission found Mrs. Martin to be "wholly depen-

---

4. In addition, a distribution from Beverage Capital and dividends placed the Martins' total family income at $357,423.

dent" on her deceased husband. Pursuant to Md.Code (1991 Repl.Vol., 1998 Supp.), Labor and Employment Art., § 9–602 ("Average weekly wage") and Code of Maryland Regulations (COMAR) 14.09.01.07, the Commission determined that Mr. Martin's average weekly wage was $2,850 per week ($148,200 per year). In accordance with the established formula, the Commission awarded Mrs. Martin $475 for 94.736 weeks as the weekly death benefit, retroactive to January 15, 1992.[5]

Respondents filed an appeal of the Commission's order to the Circuit Court for Anne Arundel County, challenging the finding of Mrs. Martin's total dependency. The appeal was decided through cross motions for summary judgment, and on February 3, 1995, the court granted Mrs. Martin's summary judgment motion finding that she was "wholly dependent" on her husband at the time of his death. Respondents did not appeal this ruling. In accordance with the Commission's award, by the end of January 1994, Respondents had made total payments to Mrs. Martin of $45,000, the maximum initial award of compensation under § 9–681(c)(2). They then discontinued the benefits.

At this point, the issue became whether Mrs. Martin continued to be wholly dependent after she received the initial maximum benefits under § 9–681(d). Since 1993, Mrs. Martin has been working as an independent contractor, brokering products for Canada Dry Corporation to Giant Food. Her job is low paying with sporadic, non-established hours. Mrs. Martin has earned the following since Mr. Martin's death in January 1992: 1993—$11,249.50; 1994—9,651.00; and 1995—$15,879.00.[6] Mrs. Martin filed issues with the Commission,

---

**5.** Pursuant to § 9–681(b), the death benefit "shall equal two-thirds of the average weekly wage of the deceased covered employee, but may not: (i) exceed the State average weekly wage...." In 1992, pursuant to Md.Code (1991 Repl.Vol., 1998 Supp.), Labor and Employment Art., § 9–603 ("State average weekly wage"), the State average weekly wage was $475, the maximum allowable under the statute. Pursuant to § 9–603, this State average weekly wage is adjusted on January 1 of each calendar year.

**6.** In her brief to this Court, Mrs. Martin states that her income for 1994 was $7,763 and for 1995 it was $13,676. These figures vary from those

claiming that she continued to be "wholly dependent" and seeking resumption of the weekly death benefit payments. On March 7, 1995, there was a hearing before the Commission and on August 22, 1995, it ruled that Mrs. Martin continued "to be wholly dependent on her deceased husband," and Respondents were ordered to continue paying the weekly benefits. On the same day as the ruling, the Respondents filed another appeal to the Circuit Court for Anne Arundel County, which was also decided through cross motions for summary judgment.

On November 26, 1996, the circuit court granted Mrs. Martin's motion for summary judgment, affirming the Commission's order and mandating the continuation of benefits. Respondents appealed to the Court of Special Appeals, and on February 25, 1998, the court reversed the Commission's order. The Court of Special Appeals held that Mrs. Martin was "partially self-supporting and not 'wholly dependent' *upon Workers' Compensation benefits* within the meaning of LE § 9–681(d)." *Beverage Capital v. Martin,* 119 Md.App. 662, 683, 705 A.2d 1175, 1186 (1998)(emphasis added). The court stated that when analyzing whether a dependent is entitled to continue to receive workers' compensation death benefits following the initial award of $45,000, a determination must be made as to whether there is an ongoing dependency on the *benefits,* as opposed to an ongoing dependency on the *deceased worker's salary* at the time of his or her death. *Martin,* 119 Md.App. at 672–75, 705 A.2d at 1181–82. The court went on to hold that because Mrs. Martin's employment was not temporary, occasional, or minor, and that her salary constituted approximately fifty percent of the workers' compensation death benefits, she was no longer "wholly dependent." *Martin,* 119 Md.App. at 682–83, 705 A.2d at 1185–86.

---

cited in *Beverage Capital v. Martin,* 119 Md.App. 662, 672 n. 7, 705 A.2d 1175, 1180 n. 7 (1998), which we adopt in this opinion. We simply point out this inconsistency for the record; it is not necessary for us to resolve this factual dispute in order to uphold the Commission's August 22, 1995, order.

Mrs. Martin filed a petition for certiorari in April, 1998, appealing the Court of Special Appeals' ruling on the issue of whether she remains wholly dependent. We granted certiorari. Specifically, we are asked to determine whether "continues to be wholly dependent" in § 9–681(d), as it pertains to a surviving spouse who has already received the maximum initial workers' compensation death benefits of $45,000, refers to a continued dependency on the standard of living, in the form of the deceased worker's salary, at the time of the fatal injury or on the generally lesser workers' compensation death benefits. As the Court of Special Appeals acknowledged, "[t]he statute does not explicitly say upon what the surviving spouse must continue to be dependent." *Martin*, 119 Md.App. at 671, 705 A.2d at 1180.

We reverse the Court of Special Appeals and hold that a spouse "continues to be wholly dependent," and therefore eligible for continuing workers' compensation death benefits, when he or she has an ongoing dependency on the deceased worker's salary at the time of death.

## II. DISCUSSION AND ANALYSIS

### A. Statutory Interpretation

Maryland's Workers' Compensation Act (the Act), which has been in existence for over eighty years, is intended to protect workers and their families from the various hardships that result from employment-related injuries. *Queen v. Agger*, 287 Md. 342, 343, 412 A.2d 733, 734 (1980). Specifically, "it is designed to provide workers with compensation for loss of earning capacity resulting from accidental injury, disease or death arising out of and in the course of employment, to provide vocational rehabilitation, and to provide adequate medical services." *Id.* Moreover, as we stated in *Beth.-Fair. Shipyard v. Rosenthal*, 185 Md. 416, 45 A.2d 79 (1945):

"The Workmen's Compensation Act is essentially social legislation and the provisions thereof are to be liberally construed. It must be interpreted to effectuate its general purpose and not strictly construed. Where there is a

conflict in the Workmen's Compensation law, questions of construction should be resolved in favor of the claimant." (Citations omitted).

185 Md. at 425, 45 A.2d at 83.

When we interpret a statute in order to effectuate its goal, our primary concern is to ascertain the intent of the legislature. *Oaks v. Connors,* 339 Md. 24, 35, 660 A.2d 423, 429 (1995). Regarding this task, we have previously stated: "The search for legislative intent begins, and ordinarily ends, with the words of the statute under review." *Schuman, Kane v. Aluisi,* 341 Md. 115, 119, 668 A.2d 929, 931 (1995). A statute may contain ambiguous language, requiring us to look beyond its plain language to discern intent. Where the statutory language is unambiguous and expresses a plain and definite meaning, however, we need not look beyond the words of the statute itself to determine legislative intent. *Marriott Employees v. MVA,* 346 Md. 437, 445, 697 A.2d 455, 458 (1997).

In determining legislative intent, we must never lose sight of the overriding purpose and goal of the statute. As we observed in *Kaczorowski v. Mayor of Baltimore,* 309 Md. 505, 525 A.2d 628 (1987), the search for legislative intent is most accurately characterized "as an effort to 'seek to discern some general purpose, aim, or policy reflected in the statute.'" 309 Md. at 513, 525 A.2d at 632 (quoting Melvin J. Sykes, *A Modest Proposal for a Change in Maryland's Statutes Quo,* 43 MD. LAW REV. 647, 653 (1984)). In addition, when interpreting a statute and determining legislative intent, "the entire statutory scheme [must be examined], as opposed to scrutinizing parts of a statute in isolation." *Williams v. State,* 329 Md. 1, 15–16, 616 A.2d 1275, 1282 (1992).

Once we determine that the statutory language at issue is in accordance with the legislature's intended purpose in enacting the statute, our task of interpretation is complete. *See Gargliano v. State,* 334 Md. 428, 435, 639 A.2d 675, 678 (1994)("If the language of the statute is plain and clear and expresses a meaning consistent with the statute's apparent

purpose, no further analysis is ordinarily required."); *Dickerson v. State*, 324 Md. 163, 171–72, 596 A.2d 648, 652 (1991)("When the language is clearly consistent with the apparent purpose of the statute and the result is not absurd, no further research is required.").

Thus, in interpreting and determining legislative intent, we must look to the plain language of the enactment, while keeping in mind its overall purpose and aim. Only when both of these tasks are done concurrently do we obtain an accurate interpretation of the statute. In light of these guiding principles of statutory interpretation, we now proceed to a discussion of the Maryland law that is pertinent to our analysis of § 9–681(d). As we do so, we must be keenly aware that "[t]he Workers' Compensation statute should be liberally construed so that any ambiguity, uncertainty or conflict is resolved in favor of the claimant, in order to effect the statute's benevolent purposes." *Linder Crane Service Co. v. Hogan*, 86 Md.App. 438, 443, 586 A.2d 1290, 1292 (1991)(footnote omitted).

### B. Maryland Workers' Compensation Law

#### 1. *Background*

In Maryland, there is a two-step process for determining the initial receipt and continuation of workers' compensation death benefits. The first step is to determine whether the surviving spouse is entitled to receive benefits up to the $45,000 maximum. Step one is undertaken pursuant to § 9–679, "Determination of dependency," which provides in part:

"Except as otherwise provided in this subtitle, the Commission shall determine all questions of partial or total dependency in accordance with the facts of each case that existed:

(1) at the time of the occurrence of the accidental personal injury that caused the death of the covered employee."

*See also* § 9–681(a), (b), and (c). The second step comes into play after the initial $45,000 has been paid out. If the claimant petitions for further benefits, step two requires the

surviving spouse to prove that he or she "continues to be wholly dependent" under § 9–681(d). In general, § 9–681, "Wholly dependent individuals," governs the payment of benefits to dependents following the death of a worker in the course of his or her employment. In particular, § 9–681(d) states:

"If a surviving spouse who was wholly dependent at the time of death continues to be wholly dependent after $45,-000 has been paid, the employer or its insurer shall continue to make payments to the surviving spouse at the same weekly rate during the total dependency of the surviving spouse."

The instant case concerns step two; specifically, whether the phrase "continues to be wholly dependent" refers to an ongoing dependency on the salary of the deceased worker at the time of his or her fatal injury (in essence, the standard of living experienced by the surviving spouse while the deceased employee was alive) or on the generally lesser workers' compensation death benefits. Most of this State's case law regarding this two-step process concerns step one, the determination of initial dependency. Only two reported Maryland appellate cases have looked at this second step of determining whether a claimant "continues to be wholly dependent." *See Martin, supra,* and *Linder Crane, supra.* While the "step one" cases are not directly on point with the particular issue in this appeal, they provide important guidance as to whether "continues to be wholly dependent" in § 9–681(d), step two, refers to an ongoing dependency on the deceased spouse's salary or on the benefits.

The standard of review for workers' compensation proceedings is found in § 9–745, "Conduct of appeal proceedings." It provides in pertinent part:

"(b) *Presumption and burden of proof.*—In each court proceeding under this title:

(1) *the decision of the Commission is presumed to be prima facie correct;* and

(2) the party challenging the decision has the burden of proof.

(c) *Determination by court.*—The court shall determine whether the Commission:

(1) justly considered all of the facts about the accidental personal injury . . .;

(2) exceeded the powers granted to it under this title; or

(3) misconstrued the law and facts applicable in the case decided.

\* \* \*

(e) *Disposition.*—(1) If the court determines that the Commission acted within its powers and correctly construed the law and facts, the court shall confirm the decision of the Commission.

(2) If the court determines that the Commission did not act within its powers or did not correctly construe the law and facts, the court shall reverse or modify the decision or remand the case to the Commission for further proceedings." (Emphasis added).

Beyond the statutory language, further guidance of the standard of review may be found in *Frank v. Baltimore County,* 284 Md. 655, 399 A.2d 250 (1979), in which we stated:

"In reviewing this ruling we, as was the circuit court, are to be guided by the general statutory command that 'the decision[s] of the Commission [are] entitled to prima facie correctness.' A court, therefore, may reverse a commission ruling only upon a finding that its action was based upon an erroneous construction of the law or facts. . . ." (Citations omitted).

284 Md. at 658, 399 A.2d at 252 (quoting in part *Md. Bureau of Mines v. Powers,* 258 Md. 379, 382, 265 A.2d 860, 862 (1970)).

## 2. *"Step One" Cases*

Unfortunately, the Act does not define "total dependency" or "wholly dependent." Until June 1, 1947, when Chapter 895

of the Acts of 1947 took effect, the law presumed that a wife was wholly dependent on her husband. *Meyler v. Mayor and City Council,* 179 Md. 211, 215, 17 A.2d 762, 764 (1941). The 1947 amendments removed the presumptions of dependency and placed all matters of dependency within the discretion of the Commission. § 9–679. We have often stated, in accordance with § 9–679, that "the question of dependency is one primarily of fact to be decided in every case upon the facts of that case." *Rosenthal,* 185 Md. at 420, 45 A.2d at 81.

In 1941, this Court stated that the test of dependency is "not whether a claimant was capable of supporting himself without the earnings of the workman, but whether he did in fact rely upon such earnings for his livelihood, in whole or in part, under circumstances indicating an intent on the part of the workman to furnish such support." *Meyler,* 179 Md. at 217, 17 A.2d at 765. In 1958, we defined a "dependent" within the meaning of the Act as "one who relies wholly or in part upon a workman for the reasonable necessities of life at the time of his accidental injury. A legal or moral obligation to support some one does not create dependency *in the absence of actual support.*" *Mario Anello v. Dunn,* 217 Md. 177, 180, 141 A.2d 731, 733 (1958)(emphasis added).

*Meyler, supra,* was one of our early cases in which we examined the issue of dependency in the workers' compensation death benefits context. In *Meyler,* the claimant, who was the stepdaughter of the deceased, and her stepfather agreed that she would stay home and take care of her invalid mother and the home. 179 Md. at 213, 17 A.2d at 763. Even though the claimant had previously held a factory job and was capable of supporting herself, we held that "there is no provision in the statute requiring that a person must be incapable of supporting himself before he can be dependent, and there is no reason to hold that dependency should be so restricted in its meaning." *Meyler,* 179 Md. at 217, 17 A.2d at 765. We further stated that the "mere ability to earn a livelihood does not necessarily preclude a person from being a dependent." *Id. See also Superior Builders, Inc. v. Brown,* 208 Md. 539, 543, 119 A.2d 376, 378 (1956)("[I]n construing the Act, the

courts do not demand that a claimant must show destitution to obtain an award as a total dependent."). We held that the evidence was sufficient for the jury to find that the claimant was either totally or partially dependent on the deceased and ordered a new trial. *Meyler,* 179 Md. at 219, 17 A.2d at 766.

In the 1944 case of *Larkin v. Smith,* we examined the words "wholly dependent" as delineated in the Act. 183 Md. 274, 37 A.2d 340 (1944). In this case, the claimant alleged that she was dependent on her son for financial support, even though she sometimes sold eggs from her hens, ate occasional free meals at the restaurant where she previously worked, and intermittently received clothing from her former employer. *Larkin,* 183 Md. at 276–77, 37 A.2d at 341. The employer/insurer (appellants) maintained that the jury should be instructed that "if they should believe from the evidence 'that the claimant received *any support from any source other than from [her son] at the time of his injury* ' " then the claimant could not be found wholly dependent on her deceased son. *Larkin,* 183 Md. at 278, 37 A.2d at 342 (emphasis added).

In finding the claimant to be "wholly dependent" on her deceased son, we noted that while these words were not precisely defined under the Act, other jurisdictions had adopted what appeared to be the following universal rule as to their meaning:

> " 'Total dependency exists where the dependent subsists entirely on the earnings of the workman; but in applying this rule courts have not deprived claimants of the rights of total dependents, when otherwise entitled thereto, *on account of temporary gratuitous services rendered them by others, or on account of occasional financial assistance received from other sources,* or on account of other minor considerations or benefits which do not substantially modify or change the general rule as above stated.' " (Emphasis added).

*Larkin,* 183 Md. at 280, 37 A.2d at 343 (quoting *Bloomington–Bedford Stone Company v. Phillips,* 65 Ind.App. 189, 116 N.E. 850, 852 (1917)). *See also Johnson v. Cole,* 245 Md. 515, 520–

21, 226 A.2d 268, 271 (1967)(stating that aid or benefits from other sources will not negate a finding of total dependency so long as they "do not substantially affect or modify [the dependent's] status toward the deceased employee").

In adopting the above rule, we stated that we "did not think that the legislature intended such an illiberal construction of the word 'wholly' as contended ... by the appellants" and concluded that the Act "must be interpreted to effectuate its general purpose, and not by strict rules of construction." *Larkin,* 183 Md. at 282, 37 A.2d at 344.

Similarly, in *Rosenthal, supra,* we also found that the claimant was totally dependent on her deceased husband, even though she was employed at the time of her husband's death. In examining the particular facts of the case, as we are required to do pursuant to § 9–679, we found that the claimant was working outside the home "because her boy was in the Navy and she was worried and wanted to occupy her mind ... until her son came home...." *Rosenthal,* 185 Md. at 423, 45 A.2d at 82. Therefore, we held that "the claimant's work was only temporary or occasional, and that *her intention was to depend solely on her husband's income in the future as she had in the past.* So finding, the jury could decide that there was total dependency within the meaning of the Act." *Rosenthal,* 185 Md. at 426, 45 A.2d at 84 (emphasis added). *See also Harvey v. Roche & Son,* 148 Md. 363, 129 A. 359 (1925) (recognizing that claimant, who though separated from her spouse at the time of his death but received monthly support money from him, could be found a total dependent even though she collected weekly rent from a boarder).

Thus, as the above cases illustrate, a claimant can be found totally dependent even though he or she has received occasional financial aid or benefits from sources other than the deceased employee. Later cases somewhat restricted the above holdings, however, with the development of the "consequential contribution" test, under which total dependency status may be denied to dependents who make a "consequential contribution" to their own support. Specifically, this test states that while a wholly dependent claimant "may receive

temporary gratuitous services, occasional financial assistance or other minor benefits from sources other than the deceased workman . . . *he must not have had a consequential source or means of maintenance in addition to what is received out of the earnings of the deceased."* *Mullan Construction Co. v. Day,* 218 Md. 581, 586, 147 A.2d 756, 759 (1959)(emphasis added).[7]

*Mario Anello, supra,* was the first case to apply the consequential contribution test. In *Mario Anello,* Mrs. Dunn, the claimant, had pooled her significant earnings with that of her husband's for several years and used them to support the family. 217 Md. at 180, 141 A.2d at 733. In finding Mrs. Dunn to be partially dependent, we held that we were "unable to say that a jury could properly find, or infer, that her earnings were not a consequential part of her maintenance; therefore she was not wholly dependent upon her husband." 217 Md. at 183, 141 A.2d at 734.

*Mullan Construction, supra,* following on the heels of *Mario Anello, supra,* also involved a wife pooling her earnings with her deceased husband. As in *Mario Anello,* we found that Mrs. Day was partially, not totally, dependent on her deceased husband, as she made almost fifty percent of her husband's salary. *Mullan Construction,* 218 Md. at 588, 590, 147 A.2d at 760, 761. We held that:

"[W]here the earnings of [Mrs. Day] were substantial, where she did not subsist solely out of the earnings of her husband, and where she either could not or would not account for more than half of her net earnings, she cannot establish the status of a total dependent by merely claiming she did not pool her earnings with those of her husband."

*Mullan Construction,* 218 Md. at 589, 147 A.2d at 760.

In yet another pooled income case, *Toadvine v. Luffman* examined whether the deceased employee's two minor chil-

---

7.  While we first mentioned the consequential contribution test in *Larkin v. Smith,* 183 Md. 274, 280, 37 A.2d 340, 343 (1944), we did not apply it until *Mario Anello v. Dunn,* 217 Md. 177, 183, 141 A.2d 731, 734 (1958).

dren were totally dependent on him at the time of his death. 14 Md.App. 333, 286 A.2d 790 (1972). The court applied the consequential contribution test and found that because the "mother's contributions were a substantial source, about 40%, of the total funds," the children were not totally dependent on their deceased father. *Toadvine*, 14 Md.App. at 346–47, 286 A.2d at 797. The court stated that "[t]he mother's contributions were regular as distinguished from occasional, permanent as distinguished from temporary, *substantial as distinguished from minor.*" *Toadvine*, 14 Md.App. at 346, 286 A.2d at 797 (emphasis added). *See also Simmons v. B & E Landscaping Co.*, 256 Md. 13, 15, 259 A.2d 314, 316 (1969)(upholding the trial judge's conclusion that " 'the mother's contribution to this family [cannot] be deemed either occasional or inconsequential. She . . . was and is the bulk of the support of her children.' ").

■ Thus, as these "step one" cases demonstrate, a claimant can be found a total dependent even though he or she has received occasional financial aid or benefits from sources other than the deceased worker. However, if these additional benefits constitute a consequential contribution to the claimant's own support, then a finding of total dependency will be defeated.

### 3. "Step Two" Cases

As mentioned, only two reported appellate cases have examined the issue of whether a claimant "continues to be wholly dependent" after the sum of $45,000 has been paid. *See Martin, supra,* and *Linder Crane, supra. Linder Crane* does not fully address the specific issue posed in the instant case, and we need not determine whether we would adopt all aspects of its holding. *Linder Crane,* however, does lend support to our, and the Commission's, interpretation of § 9–681(d), which is that "continues to be wholly dependent" refers to the claimant continuing to be dependent on the salary of the deceased worker at the time of death.

In *Linder Crane* the claimant was the surviving spouse of the deceased employee, who was killed in an automobile accident during the course of his employment. 86 Md.App. at 440, 586 A.2d at 1291. During their twenty-year marriage, Mr. Hogan supported the family and Mrs. Hogan was a homemaker. *Id.* Mrs. Hogan began a paying job two months after her husband's death, due to financial necessity brought on by a dispute as to death benefit compensability. *Linder Crane,* 86 Md.App. at 440–41, 586 A.2d at 1291. Eventually, Mrs. Hogan was determined to be wholly dependent on her husband and was awarded the maximum initial workers' compensation death benefits. *Linder Crane,* 86 Md.App. at 441, 586 A.2d at 1291. She quit her job approximately two weeks after receiving the $45,000. *Id.* The benefit payments were stopped after the $45,000 had been paid, so Mrs. Hogan filed a claim to have the benefits reinstated. *Id.* The Commission reinstated her benefits and the circuit court affirmed, holding: "[I]t was undisputed that appellee was not working at the time the Commission continued her benefits and that she did not work during her marriage." *Linder Crane,* 86 Md.App. at 442, 586 A.2d at 1292. Appeal was then made to the Court of Special Appeals.

The Court of Special Appeals affirmed the circuit court's holding that Mrs. Hogan's workers' compensation death benefits should be reinstated. *Linder Crane,* 86 Md.App. at 447, 586 A.2d at 1294. After finding that Mrs. Hogan was wholly dependent on Mr. Hogan for the twenty years prior to his fatal accident, and that she only worked after his death for thirty-three months due to financial necessity, the court held that Mrs. Hogan remained wholly dependent on Mr. Hogan. *Linder Crane,* 86 Md.App. at 443–45, 586 A.2d at 1292–94. In examining the issue of Mrs. Hogan's ability to earn money outside of the home, the court referenced *Meyler* for the proposition that simply because a "claimant has the ability to be self-supporting does not preclude her from being wholly dependent." *Linder Crane,* 86 Md.App. at 444, 586 A.2d at 1293. In support of its finding of Mrs. Hogan's total dependency, the court focused on the private marital agreement

between the Hogans, stating: "[Mrs. Hogan] and Joseph agreed that she should . . . stay home . . . while he supported the family. *This was the arrangement at the time of Joseph's death.*" *Id.* (emphasis added). Basing its holding on a "benevolent reading" of the statute, the court held that:

"Frances' ability to work will not prevent her from being wholly dependent. Moreover, the fact that Frances actually earned a salary for thirty-three months will not prevent her from continuing to be deemed wholly dependent, once she terminated her employment. The courts have been reluctant to deprive a claimant of the rights of a wholly dependent, when otherwise entitled thereto, on account of temporary employment which *was not intended to alter the dependency of the claimant on the worker.*" (Emphasis added).

*Linder Crane,* 86 Md.App. at 444, 446, 586 A.2d at 1293, 1294. The court further held that Mrs. Hogan's pressure to obtain outside employment due to necessity did not "alter the arrangement that existed prior to Joseph's death—that he supported the family and she maintained the home." *Linder Crane,* 86 Md.App. at 446, 586 A.2d at 1294.

In ordering the continuation of benefits to Mrs. Hogan, the *Linder* court did not state explicitly what the surviving spouse continued to be dependent on—the workers' compensation death benefits or Mr. Hogan's salary at the time of his fatal accident. We question, however, the Court of Special Appeals' statement in *Martin* that "[t]he *Linder Crane* Court looked to the income Mrs. Hogan received from Workers' Compensation benefits to determine whether she continued to be totally dependent after the amount of $45,000 had been paid." 119 Md.App. at 677, 705 A.2d at 1183. On the contrary, we can readily infer from the court's emphasis on the agreement between the Hogans that existed during their lengthy marriage, along with our prior case law and the need for a liberal construction of the Act favoring the claimant, that the *Linder Crane* court found Mrs. Hogan "continued to be wholly dependent" on the salary of Mr. Hogan at the time of his death.

### C. The Law as Applied to This Case

In applying the Maryland law discussed *supra,* while concurrently reading the Act liberally in order to effectuate its benevolent purpose of compensating injured workers and their families, we hold that Mrs. Martin "continues to be wholly dependent" under § 9–681(d) on Mr. Martin's income at the time of his fatal accident. For the reasons discussed below, we find that the Court of Special Appeals erred in holding that Mrs. Martin could only continue to receive compensation if she had an ongoing dependency on the death benefits. As we will elaborate *infra,* Mr. Martin, the deceased spouse, earned an average of $200,000 per year while he was alive. In stark contrast is the average salary of Mrs. Martin, the surviving spouse, of approximately $15,000 per year. After Mrs. Martin received the initial $45,000, she was still earning approximately $15,000 per year; therefore, she "continues to be wholly dependent" if her circumstances have not changed since the initial dependency determination was made.

Respondents assert that § 9–681(d) is ambiguous as to the identity of the payment source upon which the surviving spouse must continue to be dependent, but we find no ambiguity in the statute. Indeed, the plain language of § 9–681(d) itself states "at the time of death" when discussing the initial determination of dependency. Therefore, if the Act makes the awarding of initial benefits dependent on the salary of the deceased spouse at the time of death (*see* § 9–681(b)), then it is only logical and consistent that determinations of ongoing dependency under § 9–681(d) should also depend on the salary of the deceased spouse. In addition, even if we did find ambiguity in the language of § 9–681(d), we must resolve all such ambiguities in favor of the claimant, Mrs. Martin, as it was the intent of the legislature that the Act be liberally construed to effect its broad remedial goal. As such, we must also examine § 9–681(d) in context of the Act's overall remedial scheme, not in isolation. For example, § 9–681(a), which empowers the Commission to decide whether the claimant is wholly or partially dependent on the deceased employee after the worker's death, provides: "If there are *individuals who*

*were wholly dependent on a deceased covered employee at the time of death* resulting from an accidental personal injury or occupational disease, the employer or its insurer shall pay death benefits in accordance with this section." (Emphasis added). Section 9–681(c), which governs the duration of benefits, states that death benefits are to be paid "(1) *for the period of total dependency;* or (2) until $45,000 has been paid." (Emphasis added).

Thus, when subsection (d) is read within the overall context of § 9–681, there is no language to indicate that the issue of total dependency after the $45,000 has been paid should focus on a continued dependency "on the benefits." To the contrary, if subsection (a) is read as a preamble to the rest of the section, including subsection (d), it plainly states that the test for determining total dependency is "individuals who were wholly dependent on a deceased covered employee at the time of death." The logical inference from this reading is that for a claimant to continue to be wholly dependent, he or she must have an ongoing dependency on the deceased worker's salary *at the time of death.*

In the instant case, pursuant to § 9–679, Mrs. Martin's dependency was determined at the time of her husband's death, which was the same time as the accident. In the recent case of *Meadowood v. Keller,* 353 Md. 171, 725 A.2d 563 (1999), we also construed dependency in the Act to turn on the timing of the event giving rise to the benefit. Mrs. Keller was injured in a job-related accident and later died of an unrelated cause. At the time of the accident, her son was not financially dependent on her, but he later became so after he left his job to live with and take care of her. Using § 9–679, which covers death benefits, as a guide in construing Md.Code (1991 Repl. Vol., 1998 Supp.), Labor and Employment Art., § 9–632, which deals with permanent partial disability benefits, we held that the dependency of Mrs. Keller's son turned on his circumstances at the time of her accident and not at the time of her death. *Keller,* 353 Md. at 185, 725 A.2d at 571. We noted that § 9–679 mandates application of the facts existing at the time of the accident that caused the death of the employee in

dependency determinations and held that dependency for the purposes of § 9–632 must also be determined as of the date of the accident. *Keller*, 353 Md. at 176–78, 725 A.2d at 566–67. This Court stated: "[W]e are unable to discern any evidence that the Legislature desired to have the term 'dependent' mean one thing for purposes of the death benefits and another for purposes of the survived benefit, nor have we been able to determine any compelling reason why it would have wanted to have different standards apply." *Keller*, 353 Md. at 187, 725 A.2d at 571. Like we held in *Keller*, we believe that § 9–681(d) should be construed to turn on the timing of the event giving rise to the benefit.

Respondents further propose that, in determining whether Mrs. Martin "continues to be wholly dependent," we should look at Mrs. Martin's current income and compare it to the maximum benefits available under the statewide average weekly wage pursuant to Md.Code (1991 Repl.Vol., 1998 Supp.), Labor and Employment Art., § 9–602 and COMAR 14.09.01.07. Respondents maintain that if Mrs. Martin's current income constitutes a significant percentage of the statewide average weekly wage, then she is no longer dependent on the workers' compensation death benefits and is therefore not wholly dependent. We decline to adopt Respondents' proposed formula for calculating whether a claimant "continues to be wholly dependent" under § 9–681(d). Rather, the correct formula to apply in making ongoing dependency determinations is to compare the amount earned by the worker at the time of death with the amount the surviving spouse earns after the $45,000 has been paid.

In *Martin*, the court based its holding in part on a detailed hypothetical regarding two surviving spouses whose deceased spouses made very differing salaries when they were alive, resulting in a more frequent finding of "continues to be wholly dependent" on the part of the wealthier surviving spouse.[8] The court stated:

8. The hypothetical reads as follows:

"If we were to adopt [Mrs. Martin's] reading of [ ] § 9–681(d), persons whose spouses earn huge incomes would be more likely to be able to convince the Commission that they continue to be wholly dependent than those with modest income. This would produce an illogical and unjust result and one at odds with the purpose of the Act."

*Martin,* 119 Md.App. at 673, 705 A.2d at 1181.

We do not feel it necessary to refute the court's hypothetical point-by-point, but instead rely on four safeguards to demonstrate the hypothetical's fallacious reasoning. Before we discuss the safeguards, however, we want to first view the hypothetical from a different perspective. The hypothetical can easily be seen as penalizing the spouse whose husband earned more money, in that she will receive only eight percent of her deceased husband's average weekly wage in workers' compensation death benefits as compared to the spouse with the more modest income, who will be awarded sixty-two percent of her husband's salary. In examining the instant case, it was found that two-thirds of Mr. Martin's average weekly wage of $2,850 at the time of his death was $1,881. Therefore, Mrs. Martin's weekly death benefit was $475, which was the maximum permitted under the Act in 1992. *See* footnote 5, *supra.* As such, Mrs. Martin was only receiving seventeen percent of her husband's full weekly salary in

---

"Suppose Spouse 1 and Spouse 2 are wholly dependent on the incomes earned by their husbands and both husbands die on the same date. Spouse 1's husband earns $320,000 per year and Spouse 2's husband earns $40,060 annually. Both surviving spouses receive $475 per week in death benefits pursuant to [ ] § 9–681. If, after the insurer has paid $45,000 in death benefits to both Spouse 1 and Spouse 2, both get a job paying $15,000 per year, Spouse 2, under [Mrs. Martin's] formulation, would have a much more difficult time convincing the Commission that she continues to be wholly dependent because her $15,000 annual income is 37.5 percent of the amount that her husband earned when he lived. On the other hand, Spouse 1, whose husband made eight times as much as Spouse 2's husband, could argue that her current income is only 5 percent of her husband's former salary—and thus, in comparison, minuscule."
*Martin,* 119 Md.App. at 673, 705 A.2d at 1181.

workers' compensation death benefits; a figure nowhere near her husband's average weekly wage at the time of his death.

At this juncture, we wish to emphasize that we are not determining a specific income percentage or amount at which a surviving spouse achieves a self-supporting status. We simply use percentages in this opinion to illustrate the major income disparity between Mrs. Martin's current financial situation and what her lifestyle was when Mr. Martin was alive. In accordance with the Act and the manner in which the Commission administers it, we maintain that Mrs. Martin's dependent status, either total or partial, will not abruptly end at a particular point in time, say after she has received death benefits for a certain number of days, weeks, months, or years. Instead, she will continue to receive benefits so long as her dependency on her deceased husband's salary remains. Under the current schema, Mrs. Martin's benefits will continue until she remarries, dies, or the Commission determines that she has become either wholly or partially self-supporting.

We now turn to the safeguards that protect against the unjust awards predicted in the Court of Special Appeals' hypothetical by our adoption of an interpretation of § 9–681(d) based on the deceased worker's salary. The first safeguard is the statutory cap on compensation. The cap obviates the Court of Special Appeals' concern that a wealthy claimant will reap an unjust award. Under § 9–681(b), the weekly benefit may not "exceed the State average weekly wage." We need look no further than the instant case to see the curative effect of this safeguard. Mr. Martin's average weekly wage was found to be $1,881 (two-thirds of $2,850), yet Mrs. Martin was only receiving the statewide average weekly wage of $475, which is the maximum allowed under the statute. Therefore, Mrs. Martin's average weekly income was reduced by $1,406, a seventy-five percent reduction.

The second safeguard is § 9–679, which requires that initial dependency determinations be based on the particular facts of each case. Section 9–679's mandate, that the Commission must examine each case on its own unique set of facts,

prevents the perceived unfairness and injustice that Respondent, and the Court of Special Appeals, maintains would result if we determine that "continues to be wholly dependent" refers to an ongoing dependency on the deceased worker's salary rather than the benefits. The particular facts and circumstances include the wide range of salaries that may be involved from case to case. For this reason, it would be inappropriate for us to adopt a specific percentage under which a dependent can earn income, relative to the deceased worker's salary, and still be found "wholly dependent" by the Commission. In this case, Mrs. Martin earns approximately eight percent of Mr. Martin's yearly income at the time of his death. On its own, Mrs. Martin's approximately $15,000 annual salary is insufficient to compensate her as contemplated by the legislature in enacting the Workers' Compensation Act. Modifying the facts of the instant case and applying them to our own hypothetical, say that Mr. Martin was earning $500,-000 at the time of his death. If we take eight percent of $500,000, Mrs. Martin's annual salary would be $40,000 per year. Now when we apply § 9–679 and examine the particular facts and circumstances of this hypothetical, we observe that the Commission could well determine that Mrs. Martin is not wholly dependent, even though her $40,000 salary would also constitute a mere eight percent of Mr. Martin's annual salary at the time of his death.

The third safeguard is the consequential contribution test, discussed in Part II.B.2. *supra,* which ensures that total dependency will not be found if the claimant makes a substantial contribution to his or her own support. In applying the consequential contribution test to this case, it is clear that Mrs. Martin's earnings with Canada Dry do not constitute a "consequential contribution" to the family income. First, when we apply the correct formula, detailed *supra* in this section, and compare Mrs. Martin's current income against Mr. Martin's salary at the time of his death, it is obvious that the percentage of Mrs. Martin's earnings when compared to Mr. Martin's does not rise to the level of those found in the *Mario Anello, Mullan Construction,* and *Toadvine* cases,

discussed *supra*, so as to constitute a consequential, substantial contribution. As mentioned, Mr. Martin's weekly wage was $2,850. After business expenses were deducted, Mrs. Martin's approximate weekly wages from her Canada Dry job were as follows for the three years after her husband's fatal injury: 1993—$216 ($11,249.50 divided by 52); 1994—$186 ($9,651 divided by 52); and 1995—$305 ($15,879 divided by 52). Thus, in 1993, Mrs. Martin earned eight percent of Mr. Martin's full weekly wage; in 1994, she earned seven percent; and in 1995, she earned eleven percent. Second, even if we apply the formula that the Court of Special Appeals adopted and compare Mrs. Martin's current income to the statewide average weekly wage, we see that her weekly income is significantly less than the statewide average weekly wage of $475 in 1992, a figure that increases every year and thus makes the disparity even greater today. From the above weekly wage calculations, it is apparent that Mrs. Martin is not earning more than the average worker in Maryland, nor anywhere close to this average weekly wage. Moreover, there has been little change in Mrs. Martin's financial circumstances since the time when the Commission initially found her to be "wholly dependent" on Mr. Martin in its initial death benefit compensation award of February 1, 1994. Her personal income remains fairly static.

The final safeguard that exists to curb unfair award determinations is found in § 9–681(j). It states in pertinent part:

"(j) Continuing jurisdiction of commission.—The Commission has continuing jurisdiction to:

(1) determine whether a surviving spouse or child has become wholly or partly self-supporting;

(2) suspend or terminate payments of compensation."

Therefore, should Mrs. Martin's financial circumstances change down the road and she becomes either wholly or partially self-supporting, the Commission has the authority to reduce or eliminate her benefits as necessary.

In many cases there may well be a discrepancy in the amount of ultimate benefits awarded to a person who is

wealthy and a person who is not. In general, workers' compensation benefits are based on the worker's income, so there will naturally be a variable in how much claimants receive. However, the unfairness the court says will result if we adopt an interpretation of continued dependency based on the deceased worker's salary, rather than on the death benefits, is negated by application of the above four safeguards. The (1) built-in protection of the statutory cap; (2) the analysis of dependency determinations on a case-by-case basis pursuant to § 9–679; (3) the application of the "consequential contribution" test after the initial $45,000 has been paid; and (4) the exercise of Commission jurisdiction under § 9–681(j), as necessary, all will result in findings that are consistent and in accordance with the benevolent purpose of the Act. Finally, any unfairness that results which is beyond the reach of these safeguards is for the legislature to resolve.

We now turn to a discussion of *Linder Crane*, which the Respondents misconstrue. In finding that Mrs. Martin continues to be wholly dependent on Mr. Martin's income at the time of his death, we note that the Martins, like the Hogans in *Linder Crane*, had a private marital agreement that she would not work outside the home. This agreement was in place for the last several years of their marriage, including at the time of Mr. Martin's death; thus, it is clear that he intended to provide indefinite financial support for his wife while she took care of the household. Like Mrs. Hogan in *Linder Crane*, Mrs. Martin sought employment due to the financial circumstances brought about by her husband's death.

Respondents point to the "temporary employment" language found in *Linder Crane* and maintain that because Mrs. Martin's present job with Canada Dry is not temporary, as Mrs. Hogan's was found to be, she cannot continue to be wholly dependent on Mr. Martin. While it is true that Mrs. Martin's position with Canada Dry may not be temporary or occasional, it is undisputed that her income, which has never exceeded $16,000, is a mere fraction of what the Martin family income was when her husband was alive. Any contributions Mrs. Martin made to the family income, both while Mr. Martin

was alive and also after his death, were minor, insubstantial contributions. Mrs. Martin's job selling business forms, which she had while Mr. Martin was alive, was purely a sideline business that yielded no substantial income ($4,246 in 1991). Moreover, her clients for this sideline business derived almost exclusively from her husband's business contacts. In addition, the salary she received from Sun Dun was purely gratuitous and did not in any way alter her dependent status on her husband.

Therefore, we can analogize the "temporary employment" scenario in *Linder Crane* to the major disparity that exists between Mrs. Martin's current income and what it was before Mr. Martin died. In so doing, it is obvious that Mrs. Martin's low-paying job with Canada Dry, with its sporadic, non-established hours, was "not intended to alter [her] dependency ... on [Mr. Martin]." *See Linder Crane,* 86 Md.App. at 444, 586 A.2d at 1293. "Even total dependency is consistent with the receipt of some other income, *if unsubstantial,* or sporadic." 2A ARTHUR LARSON, LARSON'S WORKMEN'S COMPENSATION LAW § 63.13, at 11–134 (1989)(footnote omitted).

On a policy level, if we were to adopt Respondent's interpretation of § 9–681(d) there would be a disincentive for a surviving spouse, or any dependent, to work and be a productive member of society; instead, he or she could earn more money by not working and staying home. At the present time, Mrs. Martin is not earning more than the benefits, so if she had simply quit her job prior to the second workers' compensation hearing, she would have unquestionably been granted continuing death benefits. Perhaps this "all or nothing" facet of the Act is something that the legislature should address, but until it does should we tell people in Mrs. Martin's situation to simply quit their jobs in order to retain their benefits? Rather than being punished by having her benefits discontinued, Mrs. Martin should be commended for working. Efforts toward self-sufficiency should be encouraged, not discouraged.

We agree with Judge Wolff's factual finding, and the Commission's finding and interpretation of the statute, that Mrs. Martin's current income level is "not sufficient to provide her with the basic necessities contemplated by the Workers' Compensation statute." While it may appear unfair to some, the reality of our capitalist system is that people earn vastly different amounts of money depending on their education, training, background, and level of industriousness, among other factors. That reality is reflected in the Act's recognition that even with the application of the safeguards discussed *supra*, employers/insurers must still pay higher benefits to those employees, or their dependents, for whom they have elected to compensate at a higher salary.[9] The fact is that Mrs. Martin's husband earned a high wage, and as a result she grew accustomed to a higher standard of living than many

---

**9.** We observe that our nation's workers' compensation laws were designed to eliminate a worker's right to recover in tort from his or her employer by providing them with guaranteed compensation. The *quid pro quo* is that the employer is insulated from tort liability, while the employee is guaranteed compensation, albeit at a potentially lower rate. *See* 1 Arthur Larson, Larson's Workmen's Compensation Law § 1.20, at 2 (1990)("[T]he employee and his dependents, in exchange for these modest but assured [workers' compensation] benefits, give up their common-law right to sue the employer for damages for any injury covered by the act.") As such, in any given case, this tradeoff may work to either the employer or employee's advantage. In the instant case, Mrs. Martin had no right to recover in tort because Mr. Martin was killed in the course of his employment. If Mrs. Martin had been allowed to sue in tort and had a valid claim, she would have been able to recover not only her full pecuniary loss but other damages as well. *See* Md.Code (1998 Repl.Vol.), Courts & Judicial Proceedings Art., § 3–904(d), which states, in pertinent part, that damages awarded under a wrongful death action

> "are not limited or restricted by the 'pecuniary loss' or 'pecuniary benefit' rule but may include damages for mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, parental care, filial care, attention, advice, counsel, training, guidance, or education. . . ."

The workers' compensation laws, by accounting for the injured or deceased worker's income level, therefore retain elements of the tort system that the laws were intended to replace. Thus, it is not unjust under the particular facts of this case that Mrs. Martin be awarded continuing benefits as a total dependent even though she is currently employed in a low-paying job.

experience. While she should naturally expect a diminution in income after her husband's death, the disparity should not be so great that she is subsisting solely on the income from her job as an independent contractor, which is less than ten percent of the previous family income. The Act clearly considers a claimant's standard of living when making benefit determinations; indeed, § 9–681(b) contemplates the socioeconomic status of the dependent in making an initial award of benefits when it mandates that the average weekly wage of the deceased be considered in any benefit determination.[10] *See also* 2A Arthur Larson, Larson's Workmen's Compensation Law § 63.11(b), at 11–109 (1989)(stating that "[a] showing of actual dependency does not require proof that, without decedent's contributions, claimant would have lacked the necessities of life, but only that *decedent's contributions were relied on by claimant to maintain claimant's accustomed mode of living* ")(emphasis added)(footnote omitted).

We also may be affronted by the particulars of the arrangement the Martins made; specifically, the fact that in accepting a gratuitous salary from Sun Dun, Mrs. Martin was "getting something for doing nothing." No matter what our personal biases are, we must not penalize Mrs. Martin because Mr. Martin was professionally successful and financially able to make this special arrangement with his wife. We are still obligated to look at the facts of each case and make not only our initial dependency determinations based on her deceased husband's salary, but also any continuing dependency determinations on this basis.

Thus, when we look at the plain language of the statute in the context of its benevolent purpose, we hold that Mrs. Martin "continues to be wholly dependent" on Mr. Martin's income at the time of his fatal accident. We further hold that the correct formula to apply in determining whether a claim-

---

**10.** There are other contexts where Maryland courts look to see if a person is self-supporting, and in so doing the person's status is taken into consideration. *See* Md.Code (1999 Repl.Vol.), Family Law Art., § 8–205(b)(governing awards of marital property) and Md.Code (1999 Repl.Vol.), Family Law Art., § 11–106(b)(governing awards of alimony).

ant continues to be wholly dependent under § 9–681(d) is to compare the amount earned by the worker at the time of death with the amount the surviving spouse earns after the $45,000 has been paid. If we adopt the Court of Special Appeals' interpretation, that for compensation to be continued the claimant must have an ongoing dependency on the death benefits, untold numbers of people may be unable to continue to receive the support they need to live. Nothing in our case law, or the wording of the statute itself, points to such a strict rule of construction; in fact, legislative intent tells us that we must avoid such a narrow reading of the Act.

Furthermore, pursuant to § 9–745(b)(1), the decision of the Commission is presumed to be prima facie correct. There is nothing in the record to indicate that the Commission did not fairly consider all of the facts regarding Mr. Martin's accidental death or that it exceeded its powers or misconstrued the law and facts of the case. *See* § 9–745(c)(1)–(3). Therefore, in accordance with § 9–745(e)(1), we shall affirm the decision of the Commission and uphold the order of reinstatement of Mrs. Martin's workers' compensation death benefits.

### III. CONCLUSION

For the reasons stated, we reverse the judgment of the Court of Special Appeals and hold that the phrase "continues to be wholly dependent," as found in § 9–681(d), refers to a continued dependency on the deceased spouse's income at the time of his or her death. In making ongoing dependency determinations, the amount earned by the deceased employee at the time of death must be compared with the amount the claimant earns after the initial maximum $45,000 has been paid. In deference to the Commission's interpretation of the statute and its findings, we affirm its August 22, 1995, order, which found that Petitioner continued to be "wholly dependent on her deceased husband."

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE JUDGMENT**

**422**

OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY RESPONDENT.